UNITED STATES of America, Appellee,

v.

John L. HARRIS, Defendant-Appellant.

No. 976, Docket 82–1364.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1983.

Decided May 2, 1983.

Bruce A. Baird, Asst. U.S. Atty., S.D. N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Gerard E. Lynch, Asst. U.S. Atty., New York City, of counsel), for appellee.

Phylis Skloot Bamberger, The Legal Aid Soc., Federal Defender Services Unit, New York City (Steven Lloyd Barrett, New York City, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, CARDAMONE and PIERCE, Circuit Judges.

FEINBERG, Chief Judge:

John L. Harris, charged in a multi-count indictment in the United States District Court for the Southern District of New York with commodities fraud, wire fraud, mail fraud and using a false name in furtherance of a mail fraud scheme in violation of 7 U.S.C. §§ 6o(1) and 13(b) and 18 U.S.C. §§ 1341–43, appeals from an order of Pierre N. Leval, J., that terminated the appointment of Harris's counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the Act). The basis of the order was a finding that Harris had failed to demonstrate that he was unable to afford counsel. The issues before us are whether such an order is appealable at this stage of the criminal proceeding and whether, on the merits, the order should be reversed. We conclude that Harris has the right to appeal now, and that the order should be affirmed.

## I. Background

The factual background may be stated briefly. In October 1981, Harris was arrested on a complaint in connection with this case. At his arraignment, he filed CJA Form 23, a summary, one-page financial affidavit, requesting appointment of coun-

sel under the Act. Magistrate Naomi R. Buchwald then assigned The Federal Defender Services Unit of the Legal Aid Society (LAS/Federal Defender) to represent Harris. Apparently, Jack Lipson, Esq., Attorney-in-Charge of the trial division of LAS/Federal Defender, then proceeded to represent Harris. A 57-count indictment against Harris and a co-defendant was filed in January 1982; Harris is charged in 25 counts of the indictment.

In March 1982, the government moved before Judge Leval, to whom the case had been assigned, for a "determination" under Fed.R.Crim.P. 44 and 18 U.S.C. § 3006A that Harris was "not financially unable to obtain counsel and hence is not entitled to be represented ... by Jack Lipson...." In support of its motion, the government submitted documents that allegedly showed that the Harris household (Harris is married) had over $70,000 in income during 1980, and over $30,000 in 1981. Disputing the government's conclusions, Harris's attorney submitted an affidavit in response; the government in turn filed a supplementary affidavit.

Judge Leval referred the motion to United States Magistrate Kent Sinclair, who held a hearing in July 1982. The magistrate concluded that on the record before him Harris had not met his burden of proof to establish his need for appointment of counsel. Harris declined, however, to produce any further evidence unless he was allowed to do so at an in camera, ex parte proceeding. In August 1982, the magistrate denied this request. Thereafter, Judge Leval affirmed this ruling, and Harris again declined to produce further financial information. Finally, in October 1982, the magistrate recommended that an order be issued terminating the appointment of counsel for Harris, and Judge Leval entered

such an order, but stayed it pending determination of this appeal.

## II. Appealability

The government argues strenuously that this court has no jurisdiction to review the district court's order because the appeal improperly seeks interlocutory review of a non-final order. The government correctly points out that under 28 U.S.C. § 1291, the various courts of appeals have "jurisdiction of appeals from all final decisions of the district courts...." and that in a criminal case "final decision" ordinarily means a judgment of conviction. *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956). Citing such cases as *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) and *United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974), the government reminds us that the statutory limitation reflects a firm legislative policy against interlocutory or "piecemeal" appeals. Indeed, this case illustrates the unfortunate delay in enforcement of the criminal law that such appeals can cause, since Harris was arrested over a year-and-a-half ago and he and his co-defendant have not yet gone to trial on a variety of serious charges of defrauding the public. Finally, the government stresses that allowing an appeal here will encourage defendants to seek delay in criminal cases by making an application, no matter how frivolous, for appointment of counsel and then taking an appeal from denial.

These are persuasive arguments whose strength have often been recognized by the Supreme Court[1] and by us[2] in varying factual settings. Yet, the response of appellant Harris here is equally compelling. Citing, e.g., *Gideon v. Wainwright,* 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963) and *Faretta v. California,* 422

---

1. See, e.g., *United States v. Hollywood Motor Car Co.,* —— U.S. ——, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (per curiam) (claim of prosecutorial vindictiveness); *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (speedy trial claim).

2. See, e.g., *Matter of Doe,* 546 F.2d 498 (2d Cir.1976) (motion to quash subpoena due to alleged prosecutorial interference with preparation of defense); *United States v. Garber,* 413 F.2d 284 (1969) (motion to dismiss indictment). Cf. also *United States v. Sam Goody, Inc.,* 675 F.2d 17, 20–25 (2d Cir.1982) (government motion for a new trial).

U.S. 806, 832, 95 S.Ct. 2525, 2539, 45 L.Ed.2d 562 (1975), appellant points out that the right to counsel is essential to a fair criminal trial and necessary for the protection of other rights. Appellant argues that any untoward delay here is caused by the government, which chose to seek to separate Harris from his counsel, instead of utilizing other remedies available to it after the trial, e.g., a suit for recoupment or a prosecution for perjury. Appellant argues that Judge Leval's order is appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), as applied by the Supreme Court in its subsequent cases. Under that doctrine, we have held appealable orders disqualifying counsel in both a civil case, *Armstrong v. McAlpin,* 625 F.2d 433, 440–41 (2d Cir.1980) (in banc), vacated on other grounds, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), and a criminal case, *United States v. Curcio,* 694 F.2d 14, 19–20 (2d Cir.1982); *United States v. Cunningham,* 672 F.2d 1064, 1066 (2d Cir.1982). Appellant claims that the situation here is "all but identical."

We are, therefore, once again, faced with the need to apply a body of law that has been described as "unnecessarily and unacceptably complex, uncertain, and sometimes even inscrutable." [3] But apply it we must, to the best of our ability. *Cohen* held that certain orders that were not final judgments in the ordinary sense were nonetheless appealable as a "final decision" under 28 U.S.C. § 1291 if they met three criteria: (1) that the order be separable from and collateral to the merits of the action; (2) that denial of an immediate appeal would result in irreparable damage to the party seeking review; and (3) that the issue was "too important" to be deferred until the whole case was adjudicated. *Cohen v. Beneficial Industrial Loan Corp.,* supra, 337 U.S. at 545–47, 69 S.Ct. at 1225–26. Appellant asserts that these criteria are met here. The first has been construed to mean that

the challenged collateral order, to be sufficiently final to be appealable, "must constitute 'a complete, formal, and in the trial court, final rejection' ... of a claimed right...." *Firestone Tire & Rubber Co. v. Risjord,* supra, 449 U.S. at 376, 101 S.Ct. at 674, quoting from *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977). Appellant stresses that since Judge Leval's October order was issued, over appellant's insistence that he had no money to retain counsel, he has been without an attorney, and that as long as the order stays in effect, he is being denied "the guiding hand of counsel at critical stages of the proceeding...." [4]

The government responds that the order is not final because under 18 U.S.C. § 3006A(c) orders appointing, declining to appoint or terminating appointment of counsel are not final determinations of eligibility, but rather are subject to review "at any stage of the proceedings." Appellant rejoins that the right to counsel cannot be parsed; an appointment at a later stage of a criminal proceeding cannot restore the counsel that was needed at an earlier stage. Moreover, argues appellant, the government misreads § 3006A(c); that section does not contemplate repeated requests for assignment of counsel, and on this record, where an in camera hearing was denied, appellant cannot offer additional information in support of such a request without fear of self-incrimination.

Appellant claims that the second criterion, that denial of review now would result in irreparable damage, is also met. The government argues that if appellant goes to trial without counsel and is convicted, he can of course obtain review of the order denying counsel in an appeal from the conviction, since prejudice would be presumed. Conversely, if appellant retained counsel, this would merely show that the district court's order was correct and that Harris

---

**3.** Federal Civil Appellate Jurisdiction: An Interlocutory Restatement, Law and Contemporary Problems, working draft of February 25, 1983, at vi.

**4.** We are told that LAS/Federal Defender has been instructed not to provide counsel for appellant to prepare for his trial and that its representation is solely for the appeal.

was not wrongly deprived of counsel at government expense. Appellant rejoins that his right to counsel is the right to be represented at his first trial, not at a possible second after a reversal. Moreover, says appellant, counsel's function is not merely to safeguard the fairness of a trial, but also to guide, investigate, advise and protect, at all stages including pre- and post-trial. Implicit in this argument is the assertion that appellant would need counsel perhaps to avoid an ill-advised guilty plea and even to prosecute the appeal from the hypothetical, uncounseled first trial.

Finally, appellant claims that his right to counsel is "too important" to be deferred until the entire case is adjudicated. Appellant argues that the right to counsel is too fundamental to allow a delayed vindication. Moreover, the question whether he is entitled to present in camera further evidence of his need for counsel is an issue of first impression, important not only to the conduct of this trial but of other trials as well. The government rejoins that the issue is hardly a novel one, and is governed by the principle of such cases as *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which fashioned an exclusionary rule to protect a defendant in a criminal case from the use against him at a subsequent trial of testimony given in a preliminary proceeding in support of a constitutional right. The government also points out that the issue of whether Harris can afford counsel is purely a factual one, not ordinarily considered appropriate for immediate appeal. *Armstrong v. McAlpin,* supra, 625 F.2d at 439.

■ As the foregoing volleys back and forth indicate, the issue is not a simple one. The competing considerations are strong, but we feel that appellant has the better of

the argument. We are most moved by the fundamental nature of the right to counsel and by the law of this circuit concerning disqualification of counsel. As to the former consideration, there is something jarring in ordering to trial on a serious criminal charge a person who has no counsel and says he cannot afford one. And the situation is made even more distasteful by the presence here of experienced counsel for the co-defendant. We realize that if the government is correct in asserting that a defendant can afford to retain counsel, his plight is self-created, and we should waste no time in sympathy. But for an appellate court to conclude that the government is right in a particular case would nevertheless require, under the government's argument, the unedifying spectacle of a trial of a lawyerless defendant, who proclaims his need for and inability to obtain the assistance of counsel. And there will always be the possibility that the government is wrong, which cannot be tested on appeal until the trial is over. And even then, the government's position may never be put to that test, if an uncounseled defendant unwisely decides to plead guilty or to forego an appeal after a conviction. We do not regard the suggestion to this effect in *United States v. Deutsch,* 599 F.2d 46, 48 (5th Cir.), cert. denied, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979), as "fanciful," despite the government's assertion to us that it is. We therefore agree that an order separating a defendant from his appointed counsel may, as a practical matter, never be reviewed unless we allow an immediate appeal.[5] Finally, we are impressed by the clear line of cases allowing a party to obtain immediate appellate review of an order striking a demand for jury trial, albeit by means of a petition for a writ of mandamus. E.g., *Beacon Theatres, Inc. v.*

---

**5.** Nor are we persuaded by the government's argument that orders terminating appointment of counsel are not final since a defendant "at any time in the proceeding," may renew a request for appointed counsel under the Criminal Justice Act. We do not believe that the Act contemplates repetitious requests in the ordinary case and, in any event, "[t]he fact that the district court could, under evolving circum-

stances, change the result does not vitiate the present finality of the striking of counsel since this action, if upheld, will unquestionably deny [Harris] the assistance of counsel during some part of this criminal prosecution." *United States v. Deutsch,* 599 F.2d 46, 48 n. 3 (5th Cir.), cert. denied, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979).

*Westover,* 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959); *Western Geophysical Co. of America v. Bolt Associates, Inc.,* 440 F.2d 765, 769 (2d Cir.1971). However, we do not think that the type of proceeding utilized is the key to why such appellate relief is available. Rather, it is the fundamental nature of the right that is most persuasive. So too here.

Moreover, we are equally moved by the argument that if a defendant ordinarily has the right to appeal from an order disqualifying his counsel, we cannot justify denying that right to appellant. The law in this circuit is clear that such an order is appealable, as indicated by our decisions in *Armstrong v. McAlpin,* supra (civil) and in *United States v. Curcio,* supra, and *United States v. Cunningham,* supra (both criminal).[6] The government sensibly concedes as much, but characterizes this case as revocation of an appointment of counsel rather than as disqualification of counsel. The government claims that the two types of orders are fundamentally different and that the order here is governed by our decision in *Miller v. Pleasure,* 425 F.2d 1205 (2d Cir.) (per curiam), cert. denied, 400 U.S. 880, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970), which held that there is no right to an immediate appeal from a refusal to appoint counsel in a civil case. But that is not what happened here. Mr. Lipson was appointed as counsel for defendant Harris at his arraignment and continued to represent him for almost a year, until the order under review was signed. There is no doubt that this defendant was separated from his counsel just as defendants Curcio and Cunningham were in the cases cited above. We see no need, therefore, to consider this case as though Magistrate Buchwald had refused in October 1981 to appoint counsel because Harris could afford to obtain his own. But should that case arise, we think it wise at least to point out now that the practical considera-

tions governing appointment of counsel for a plaintiff in a civil case, as in *Miller v. Pleasure,* supra, and for a defendant in a criminal case, both of whom say that they cannot afford to obtain counsel, are quite different.

■ We have also carefully considered the government's argument that allowing Harris to appeal here will enable "any criminal defendant" to obtain substantial delay by a frivolous application for appointment of counsel followed by an appeal from its denial. But most defendants faced with a criminal charge will prefer to retain their own counsel, if they can afford to, rather than have the court appoint one for them. See *Gideon v. Wainwright,* supra, 372 U.S. at 344, 83 S.Ct. at 796. In addition, false statements in an application for counsel under the Act are subject to the penalties of perjury. See, e.g., *United States v. Birrell,* 470 F.2d 113 (2d Cir.1972). The government asserts that this sanction or a civil suit for recoupment is not as effective as an inquiry at the start. The latter, according to the government, prevents its monetary loss from a fraudulent claim for appointed counsel before it occurs, does not present the problems of burden of proof for the government posed by a civil suit or a criminal prosecution, avoids the litigation burden such proceedings entail and completely protects the government's economic interests, while a criminal prosecution does not and a civil suit for recoupment frequently may not because of the difficulty of locating and levying upon a defendant's assets. All of this is undoubtedly true, but, as indicated above, these are not the only considerations. In the last analysis, monetary efficiency in this context must give way to the constitutional right to counsel.

In conclusion, we believe that appellant has satisfied the requirements of the *Cohen* doctrine for immediate appealability. For

---

**6.** Accord *United States v. Flanagan,* 679 F.2d 1072 (3d Cir.1982), cert. granted, —— U.S. ——, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983); *United States v. Agosto,* 675 F.2d 965, 968 n. 1 (8th Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *United States v. Hobson,* 672 F.2d 825 (11th Cir.), cert. denied, ——

U.S. ——, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Smith,* 653 F.2d 126 (4th Cir. 1981); *United States v. Garcia,* 517 F.2d 272, 275 (5th Cir.1975); Contra *United States v. Greger,* 657 F.2d 1109 (9th Cir.1981), cert. filed, No. 81–1357, 51 U.S.L.W. 3022 (U.S. Jan. 19, 1982).

all of the reasons set forth above, therefore, we conclude that the appeal is properly before us.

## III. The Merits

On the merits of the appeal, Harris argues that the district court's decision to terminate counsel, on the record before it, was clearly erroneous. In the alternative, Harris argues that the court's refusal to permit him to submit further evidence of inability to afford counsel in an ex parte, in camera hearing unconstitutionally jeopardized his right against self-incrimination. Harris also argues that, in any event, it was error to terminate appointed counsel when other, less drastic remedies were available.

## A. Inability to Afford Counsel

■ Both the appointment and termination of counsel in this case were governed by the Criminal Justice Act, the relevant portions of which are reproduced in the margin.[7] Subsection (a) of 18 U.S.C.

**7.** § 3006A. Adequate representation of defendants

 (a) Choice of plan.—Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation (1) who is charged with a felony or misdemeanor (other than a petty offense as defined in section 1 of this title) or with juvenile delinquency by the commission of an act which, if committed by an adult, would be such a felony or misdemeanor or with a violation of probation, (2) who is under arrest, when such representation is required by law, (3) who is subject to revocation of parole, in custody as a material witness, or seeking collateral relief, as provided in subsection (g), or, (4) for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel. Representation under each plan shall include counsel and investigative, expert, and other services necessary for an adequate defense. Each plan shall include a provision for private attorneys. The plan may include, in addition to a provision for private attorneys in a substantial proportion of cases, either of the following or both:

 (1) attorneys furnished by a bar association or a legal aid agency; or

 (2) attorneys furnished by a defender organization established in accordance with the provisions of subsection (h).

Prior to approving the plan for a district, the judicial council of the circuit shall supplement the plan with provisions for representation on appeal. The district court may modify the plan at any time with the approval of the judicial council of the circuit. It shall modify the plan when directed by the judicial council of the circuit. The district court shall notify the Administrative Office of the United States Courts of any modification of its plan.

 (b) Appointment of counsel.—Counsel furnishing representation under the plan shall be selected from a panel of attorneys designated or approved by the court, or from a bar association, legal aid agency, or defender organization furnishing representation pursuant to the plan. In every criminal case in which the defendant is charged with a felony or a misdemeanor (other than a petty offense as defined in section 1 of this title) or with juvenile delinquency by the commission of an act which, if committed by an adult, would be such a felony or misdemeanor or with a violation of probation and appears without counsel, the United States magistrate or the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him. Such appointment may be made retroactive to include any representation furnished pursuant to the plan prior to appointment. The United States magistrate or the court shall appoint separate counsel for defendants having interests that cannot properly be represented by the same counsel, or when other good cause is shown.

 (c) Duration and substitution of appointments.—A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate or the court through appeal, including ancillary matters appropriate to the proceedings. If at any time after the appointment of counsel the United States magistrate or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate. If at any stage of the proceedings, including an appeal, the United States magistrate or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d),

§ 3006A provides for appointment of counsel "for any person financially unable to obtain adequate representation...." 18 U.S.C. § 3006A(a). This standard means something less than indigency or destitution. See, e.g., *United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982); Criminal Justice Act of 1963: Hearings on S.63 and S.1057 Before the Senate Comm. on the Judiciary, 88th Cong., 1st Sess. 11 (1963) (statement of Attorney General Robert F. Kennedy) ("S.1057 studiously avoids the term 'indigent.' Instead, it adopts the test of financial inability to secure a necessary part of adequate representation.") Though doubts as to eligibility should be resolved in a defendant's favor, see VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ¶ 2.04 at 2–5 (1980), subsection (c) provides that counsel may be terminated "as the interests of justice may dictate" if, "at any time," the court determines that the defendant "is financially able to obtain counsel...." See also United States District Court for the Southern District of New York, Plan Under the Criminal Justice Act of 1964, as Amended, Part IV(c) at 8 (1971).

■ A district court decision to terminate counsel under the Act will not be lightly overturned. In *United States v. Rubinson,* 543 F.2d 951, 964 (2d Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976), we applied the test whether the district court's finding that a defendant was financially able to retain counsel was "clearly erroneous." Cf. *United States v. Bracewell,* 569 F.2d 1194, 1200 (2d Cir.1978), in which we said in the context of a recoupment proceeding under 18 U.S.C. § 3006A(f) that the district judge's decision as to availabili-

ty of funds would not be disturbed "[i]n the absence of a serious abuse of discretion." Also, while the Act and its legislative history are silent on the allocation of the burden of proof in proceedings to determine whether counsel should be appointed or terminated, the weight of authority is that the burden rests with the defendant. See, e.g., *United States v. Peister,* 631 F.2d 658, 662 (10th Cir.1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Ellsworth,* 547 F.2d 1096, 1098 (9th Cir.), cert. denied, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977); *United States v. Kaufman,* 452 F.2d 1202 (4th Cir.), cert. denied, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). Applying these principles to this case, we cannot say that the district court was clearly erroneous in finding that Harris failed to meet his burden of proof on the issue of his financial ability to obtain counsel.

When Magistrate Buchwald appointed counsel for Harris in October 1981, she had before her CJA Form 23, signed and certified by Harris as correct. This indicated that Harris had present earnings of $1,000 per month, with no other income received in the twelve months preceding October 1981. In addition, Harris disclaimed ownership of any property, including automobiles. Five months later, when the government moved to terminate the appointment of counsel, it provided Judge Leval with considerable detail, ascribing to the Harris family an income of $70,000 for 1980 and $30,000 for 1981. In response, Harris submitted an affidavit of his attorney which disclosed what the earnings of Harris and his wife had

as the interests of justice may dictate. The United States magistrate or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings.

\* \* \* \* \* \*

(f) Receipt of other payments.—Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or

community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

\* \* \* \* \* \*

been in the preceding 12 months, but, for the most part, contended that Harris's original CJA 23 affidavit was accurate. By supplementary affidavit, the government alleged that the Harris family owned two Cadillacs (one of which was registered in Harris's name), and revised the estimate of family income to $82,000 in 1980 and over $35,000 in 1981. Together, the government affidavits raised serious questions as to whether Harris's original CJA 23 affidavit, among other things, understated his income by 50%, denied ownership of automobiles when he owned at least one, and failed to disclose other income in the 12-month period preceding submission of the affidavit.

At the conclusion of the subsequent hearing before Magistrate Sinclair, where both the truth of Harris's affidavit and his ability to afford counsel were explored, the magistrate stated that "the government's presentation raises grave questions about the financial capacity of this defendant at the time the affidavit was executed last fall and as of today .... the burden of the defendant to convince the Court of his eligibility is in no way met on the present state of the record." When asked by Harris's attorney what in the record led the court to question Harris's inability to afford counsel, Magistrate Sinclair responded that there were a number of things in the government affidavits "which give rise to an indication of a large sum of money to this defendant in recent period of time, and nothing to indicate that he plausibly lacks access to those funds today." Moreover, Harris had not directly addressed the amount of his income over the past year or explained how his living expenses had drained away his substantial prior income. While Magistrate Sinclair did not make an explicit finding that Harris "presently has an X amount of money ... [which] is sufficient to meet the estimated cost ...," the magistrate concluded that "[Harris] certainly has not made a showing he is incapable of meeting these costs." The magistrate gave Harris a further opportunity to submit additional in-

formation to prove inability to afford counsel. Harris declined to do so unless the proceedings were held in camera and without the government's participation. Magistrate Sinclair then recommended that the court enter an order terminating appointment of counsel at public expense.[8] This was adopted by Judge Leval.

Putting to one side Harris's fifth amendment claim, which we address below, a court need not take at "face value" an affidavit professing "sudden indigency" which contains material misstatements and misrepresentations. See *United States v. Kelly,* 467 F.2d 262, 266 (7th Cir.1972), cert. denied, 411 U.S. 933, 93 S.Ct. 2738, 37 L.Ed.2d 151 (1973). Rather, certainly where a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated. In the case now before us, the government showed substantial income over the preceding two years, cf. *United States v. Allen,* 596 F.2d 227, 232 (7th Cir.), cert. denied, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979); *United States v. Gipson,* 517 F.Supp. 230, 231 (W.D.Mich.1981), and indicated that there might be other undisclosed sources of income. Thus, in addition to showing material misrepresentations and misstatements in Harris's CJA 23 affidavit, the government rebutted Harris's claim of inability to afford counsel by inference and circumstantial evidence. See *United States v. Deutsch,* supra, 599 F.2d at 48-49.

Harris argues that the court must explicitly consider his ability to afford counsel in light of economic realities—the cost of a criminal defense and the cost of providing for himself and dependents. See VII

---

**8.** Though the magistrate used the term "indigency," we believe that this was merely a "short-hand expression" of financial inability to afford counsel. See *United States v. Moore,* supra, 671 F.2d at 141; cf. *Morgan v. Rhay,* 78 Wash.2d 116, 470 P.2d 180 (Wash.1970).

Guide to Judiciary Policies and Procedures, supra, ¶ 2.04 at 2–5. We see no indication in this record that the magistrate and the district judge did not consider these economic realities, although we would prefer more explicit findings when such questions arise again. Moreover, Harris can hardly complain here, since he declined to come forward and rebut the government's evidence of non-eligibility. Citing *United States v. Martin-Trigona,* 684 F.2d 485, 489–90 (7th Cir.1982), Harris also argues that forcing a criminal defendant to go to trial pro se constitutes a denial of that defendant's sixth amendment right to counsel. This is certainly true when a court fails to conduct an appropriate inquiry into a defendant's financial ability to afford counsel, see id. at 490; accord *United States v. Moore,* supra, 671 F.2d at 141; *United States v. Cohen,* 419 F.2d 1124, 1127 (8th Cir.1969). In the case before us, however, the court in fact attempted to conduct further inquiry into Harris's financial situation, but was unable to do so because of Harris's refusal to proceed further unless the proceeding was conducted in camera and without the government's participation. Under these circumstances, we do not believe the court was clearly erroneous in finding that Harris failed to prove financial inability to afford counsel.

### B. The Procedures

■ Harris next argues that further inquiry should have been appropriately conducted through an ex parte, sealed in camera hearing.

Both the magistrate and district court held that such a hearing was not required. We agree. It is true that there is some support for the notion that proceedings regarding eligibility under the Criminal Justice Act should be conducted in camera and without government participation, see, e.g., *United States v. Anderson,* supra, 567 F.2d 840–41; cf. *United States v. Ellsworth,* supra, 547 F.2d at 1098 (district court stated financial statement would be viewed in camera). However, it is worth noting that the Act specifically provides for ex parte

applications for services other than counsel, see 18 U.S.C. § 3006A(e)(1), while there is no such requirement for proceedings involving the appointment or termination of counsel. Apparently, ex parte proceedings for services other than counsel are provided for to ensure that a defense would not be "prematurely" or "ill-advisedly" disclosed. See Criminal Justice Act of 1963: Hearings on S.63 and S.1057 Before the Senate Comm. on the Judiciary, 88th Cong., 1st Sess. 173 (1963). Such considerations are not relevant to proceedings concerning the appointment or termination of counsel. But since Congress obviously knew how to provide for an ex parte proceeding when it seemed appropriate, the failure to do so in the context of appointment of counsel seems significant. Moreover, our legal system is rooted in the idea that facts are best determined in adversary proceedings; secret, ex parte hearings "are manifestly conceptually incompatible with our system of criminal jurisprudence," *United States v. Arroyo-Angulo,* 580 F.2d 1137, 1141 (2d Cir.), cert. denied, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978) (citations omitted). There are numerous situations where a defendant must face the "unappealing choice," as Judge Leval noted, of testifying in open court or losing a constitutional claim. See, e.g., *United States v. Salvucci,* 448 U.S. 83, 89–95, 100 S.Ct. 2547, 2551–54, 65 L.Ed.2d 619 (1980) (fourth amendment standing); *McGautha v. California,* 402 U.S. 183, 213–17, 91 S.Ct. 1454, 1470–72, 28 L.Ed.2d 711 (1971) (fourteenth amendment right to be heard on issue of punishment).

However, "intolerable tension[s]" between constitutional rights have been alleviated by applying the rule that a defendant's testimony at a pretrial hearing will not be admissible at trial on the issue of guilt unless he fails to object. See *Simmons v. United States,* supra, 390 U.S. at 394, 88 S.Ct. at 976; see also Note, *Resolving Tensions Between Constitutional Rights: Use Immunity in Concurrent or Related Proceedings,* 76 Colum.L.Rev. 674, 678–81 (1976). We have held that "the government should not be permitted to use as part of its direct case any testimony

given by a defendant at a hearing where he is seeking *forma pauperis* relief or the assignment of counsel on the ground of his financial inability to ... afford counsel," *United States v. Branker,* 418 F.2d 378, 380 (2d Cir.1969), and that holding is directly applicable to the case before us. See *United States v. Peister,* supra, 631 F.2d at 662; cf. *United States v. Ellsworth,* supra, 547 F.2d at 1098 (assurance given by court that information disclosed could not be used in further tax prosecution).

Harris's objections to application of the *Simmons* and *Branker* rule are that it is unclear whether the Supreme Court recognizes application of *Simmons* to sixth amendment claims and that even if applicable, the rule would not provide sufficient protection for a defendant. While it is true that the Supreme Court has not yet decided whether *Simmons* is applicable in sixth amendment contexts, see *United States v. Kahan,* 415 U.S. 239, 243, 94 S.Ct. 1179, 1181, 39 L.Ed.2d 297 (1974) (per curiam), *Kahan* does not suggest that should *Simmons* not be applicable, an ex parte and in camera hearing would be appropriate here. As to Harris's argument that, in any event, *Simmons* affords inadequate protection, Harris's claim of fifth amendment violation by use of his testimony at a later time is speculative at this point. See *United States v. Peister,* supra, 631 F.2d at 662. Moreover, we believe that the speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings.

C. Other Remedies Short of Termination

█ Harris's final claim, that other remedies short of terminating appointed counsel should have been employed, is unpersuasive. Harris argues that if it is later determined that he had adequate funds to obtain counsel, the moneys expended by the government could be recovered under the recoupment provision of the Criminal Justice Act, 18 U.S.C. § 3006A(f), see note 7 supra, and Harris could also be prosecuted for perjury for obtaining counsel through untruthful financial disclosures. As already indicated,

however, in Part II of this opinion, in a perjury prosecution the burden would be on the government to prove guilt beyond a reasonable doubt. Cf. also *United States v. Pickney,* 491 F.Supp. 82, 84 (W.D.Mo.1980) (government failed to demonstrate defendants had "available" funds under 18 U.S.C. § 3006A(f)). And, even after a successful suit for recoupment, the government may not be able to locate and levy upon a defendant's assets. Moreover, as noted earlier, the Act specifically provides for termination of appointed counsel at any point in the proceedings, "as the interests of justice may dictate," if the court determines that the defendant is financially able to obtain counsel. While Harris correctly contends that doubts as to eligibility should be resolved in a defendant's favor, a defendant must still prove that he is financially unable to obtain counsel and, if he defaults in that proof, termination is an appropriate remedy. We cannot say that the district court abused its discretion in choosing that remedy here.

We cannot close this opinion without noting the high quality of briefs and arguments on both sides, for which we are grateful.

Affirmed.