748 F.2d 363
 53 USLW 2284
 UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick George CELANI, Defendant-Appellant.
 No. 84-1879.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 12, 1984.
Decided Nov. 14, 1984*.
 
 Jon Gray Noll, Springfield, Ill., for defendant-appellant.
 Richard N. Cox, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.
 Before BAUER, Circuit Judge, PELL, Senior Circuit Judge, and DUPREE, Senior District Judge**.
 BAUER, Circuit Judge.
 
 
 1
 Defendant Frederick George Celani appeals from the district court's post-indictment pretrial order denying his motion for court-appointed counsel made pursuant to 18 U.S.C. Sec. 3006A (Supp.1984). The order denying counsel was entered after a hearing wherein Celani was represented by court-appointed counsel and in which the government presented evidence indicating that the defendant had recently claimed to have a net worth of $19,619,500. Transcript of Proceedings of May 21, 1984, R. 11 at 4-5.[1] The trial court denied the defendant's motion, reasoning that the government had raised a doubt as to the defendant's indigency and that the defendant, by relying on his affidavit attesting to his current unemployed status, had failed to come forward with evidence sufficient to justify the appointment of counsel. Order of May 22, 1984, R. 5 at 1-2. Because we conclude that the district court's order is not appealable under 28 U.S.C. Sec. 1291, we dismiss the appeal without deciding the merits of the order denying appointment of counsel. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1980).
 
 
 2
 Our jurisdiction is limited to appeals from "final decisions of the district court." 28 U.S.C. Sec. 1291. The Supreme Court has held that "[t]he exceptions to the final judgment rule in criminal cases are rare." Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984). The Court emphasized that the "compelling interest in prompt trials," id. at 1054, justifies the stringency of the final judgment rule: "the policy of Congress embodied in [Section 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation." Id., quoting United States v. Hollywood Motor Car Co., 458 U.S. 263, 265, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982). Orders are excepted from the final judgment rule, and held appealable, only when they meet the strict three-prong test of Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). That test requires that "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal." Id. at 468, 98 S.Ct. at 2458 (footnote omitted). See also Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Only three types of orders in criminal cases have been held to be immediately appealable under Section 1291: orders fixing bail, Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), orders denying a motion to dismiss an indictment on double jeopardy grounds, Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and orders denying a motion to dismiss an indictment on Speech or Debate Clause grounds, Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979).
 
 
 3
 Most prejudgment orders do not meet the strict three-prong test of Coopers. In Flanagan, the Supreme Court held that an order disqualifying counsel from multiple representation is not immediately appealable. The Supreme Court reasoned that a disqualification order was not "effectively unreviewable on appeal from a final judgment," nor did it "resolve an important issue collateral to the merits of the action," as required by Coopers. Flanagan, 104 S.Ct. at 1055-57. Other orders held not immediately appealable include orders denying a motion for dismissal based on a vindicative prosecution, United States v. Hollywood Motor Car Co., 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), and pretrial orders rejecting a defendant's speedy trial claim, United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). In addition, this circuit recently has held that a district court's order denying a motion by the government to disqualify defense counsel in a criminal prosecution is not appealable. United States v. White, 743 F.2d 488 (7th Cir.1984).
 
 
 4
 The question before this court is whether a pretrial order in a criminal case denying appointment of counsel on the grounds that the defendant has not carried the burden of proving his indigency, once doubt as to his financial status has been raised by the government, meets the Coopers test and is therefore appealable under 28 U.S.C. Sec. 1291. Two circuits have held that pretrial orders denying the appointment of counsel pursuant to 18 U.S.C. Sec. 3006A are immediately appealable. United States v. Harris, 707 F.2d 653 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); United States v. Deutsch, 599 F.2d 46 (5th Cir.), cert. denied, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979). These cases, however, were decided before Flanagan, and do not survive the rationale of that case.
 
 
 5
 An order denying the appointment of counsel fails both the first and third prongs of the Coopers test. An order denying the appointment of counsel is not final, and therefore fails the first prong of the Coopers test which requires that the order "conclusively determine the disputed question." Coopers, 437 U.S. at 468, 98 S.Ct. at 2458. Pursuant to 18 U.S.C. Sec. 3006A(c), the district court may reconsider its decision to deny counsel "at any stage of the proceedings " and appoint counsel on finding that the defendant is financially unable to pay counsel whom he had retained.
 
 
 6
 In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1980), Justice Rehnquist noted that "[i]t is not at all clear ... that an order denying a motion for disqualification of counsel conclusively determines the disputed question [because] the possibility of reconsideration by the trial judge cannot be dismissed as merely theoretical." Id. at 381, 101 S.Ct. at 677 (Rehnquist, J., concurring in the result). See also Coopers & Lybrand v. Livesay, 437 U.S. 463, 471, 98 S.Ct. 2454, 2459, 57 L.Ed.2d 351 (1978). Similarly, a district court's denial of appointment of counsel to the defendant is subject to reconsideration and revision, pursuant to 18 U.S.C. Sec. 3006A(c). The order, therefore, is not final and not immediately appealable under 28 U.S.C. Sec. 1291.
 
 
 7
 Orders denying counsel are effectively reviewable on appeal and therefore fail to meet the third prong of the Coopers test. The "effective reviewability" of an order on appeal depends on whether a showing of prejudice to the defense is required to obtain a reversal. Flanagan, 104 S.Ct. at 1056. Immediate appealability is not necessary to protect the defendant's rights regarding appointment of counsel prior to trial. On appeal after the final judgment, the lower court's original ruling on the indigency of the defendant can be reviewed. If the reviewing court finds that the ruling was not clearly erroneous, then the defendant was properly instructed to obtain counsel and the defendant's decision to proceed pro se does not implicate the defendant's sixth amendment rights. The appellate court on review, however, may find clear error in the determination of nonindigency and the refusal to appoint counsel. If the defendant proceeded pro se and was convicted, he may raise a claim of the denial of his sixth amendment right to counsel. No showing of prejudice need be made in order to obtain a reversal of that conviction based on the sixth amendment claim because prejudice to the defense is presumed on appeal where court-appointed counsel was denied below. Flanagan v. United States, 104 S.Ct. at 1056 (1984); United States v. Harris, 707 F.2d 653, 656 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). See generally Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Since an order denying counsel is therefore effectively reviewable on appeal because no showing of prejudice would be necessary where clear error was found in the nonindigency determination, it cannot be held immediately appealable under Coopers and Flanagan.
 
 
 8
 We are not unaware that as a result of holding orders denying appointed counsel unappealable, lower courts wishing to err on the side of caution may appoint counsel more often than they would otherwise in order to avoid "the unedifying spectacle of a trial of a lawyerless defendant." United States v. Harris, 707 F.2d 653, 657 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). Moreover, courts, in the absence of an immediate appeal, may find it advisable to appoint counsel in questionable cases to protect against an "uncounseled defendant [who] unwisely decides to plead guilty or to forego an appeal after conviction." Id. The need to protect the legal system against piecemeal appeals, however, outweighs these concerns.
 
 
 9
 An immediate appeal does not guarantee that counsel will be appointed, so that the "unedifying spectacle of a lawyerless defendant," id., may result whether or not orders denying appointment are held immediately appealable. More importantly, even if holding appointed counsel motions nonappealable results in a more frequent appointment of counsel by lower courts wishing to err on the side of caution, thus imposing a higher cost on society in terms of the payment of appointed counsel, this consequence of a holding of nonappealability must be compared to the purposes of 28 U.S.C. Sec. 1291 and its final judgment rule. The intent of Congress in enacting Section 1291, especially in the area of criminal law, was to provide the defendant, the courts and the public with a "speedy resolution" of the merits of the case and to reduce the ability of litigants "to clog the courts through a succession of costly and time-consuming appeals" of matters which could be reviewed effectively after trial. Flanagan, 104 S.Ct. at 1054.
 
 
 10
 The possibility of increased government spending for court-appointed attorneys is less costly to our system as a whole than the undoubted expense which delayed trials and elaborate appeals would impose on the legal system should we hold denial of counsel orders to be immediately appealable. See United States v. Greger, 657 F.2d 1109, 1113 (9th Cir.1981), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 281 (1983) (comparing the costs of providing new trials for defendants who appealed their disqualification of counsel ruling with the costs to the system of allowing immediate appeals on all such orders). This conclusion is especially important in the context of denial of counsel orders. Denial of counsel orders can be manipulated easily by any defendant seeking to delay his trial. Presumably, most defendants who are able to hire their own counsel do so; therefore most motions for the appointment of counsel presumably are filed by defendants who cannot afford to hire counsel of their choice. Defendants not in actual need of court appointed attorneys are interposing such motions for purposes of delay only, fully intending to hire their own counsel, if and when their requests are denied. To permit appeals of such potentially frivolous and manipulative motions would serve to grant such defendants more of the very delay they seek but do not deserve. Cf. Note, The Appealability of Orders Denying Motions for Disqualification of Counsel in Federal Courts, 45 U.Chi.L.Rev. 450, 450-52 (1978).
 
 
 11
 For the above stated reasons, we hold that orders denying the appointment of counsel are not immediately appealable under 28 U.S.C. Sec. 1291. We therefore dismiss this appeal for lack of jurisdiction without deciding the merits of the order denying counsel.
 
 
 12
 APPEAL DISMISSED.
 
 
 
 *
 Pursuant to Circuit Rule 16, this opinion has been circulated among all the judges of this court in regular active service. No judge favored an en banc hearing on the question of a possible conflict between this opinion and United States v. Harris, 707 F.2d 653 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983), and United States v. Deutsch, 599 F.2d 46 (5th Cir.), cert. denied, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979)
 
 
 **
 The Honorable Franklin T. Dupree, Jr., Senior Judge of the United States District Court for the Eastern District of North Carolina, is sitting by designation
 
 
 [1]
 In addition to the evidence regarding the defendant's net worth as of March, 1983, the government introduced evidence which reflected that between September, 1982 and September, 1983 the defendant also had bought from the Gold & Silver Emporium in Encino, California one ounce gold Kruggerand and silver in an amount totalling $345,441.57, some of which he resold to the Emporium, but 570 Kruggerands of which remained unaccounted for as of September, 1983. The government's evidence also showed that between February, 1981 through early 1983 the defendant had received checks totalling $265,954.12 from two of defendant's corporate accounts and that the defendant between August and December, 1982 had purchased four cars, including a 1982 Corvette at a purchase price of $20,920.80, a 1982 Mercedes-Benz 380 SEL for $48,000.63 and trade-in of the Corvette, a 1979 Jeep CJ-7 for $7,000, and a 1983 Mercedes-Benz 380 SLC for $46,365.30, which was subsequently sold and the proceeds used to purchase Kruggerands. Finally, the government introduced evidence that the defendant purchased (1) "penny stock" at a price of $13,445, (2) a 1982 Bayliner boat for $12,700 on April 25, 1982, and (3) a $3,780 diamond ring and a $2,058 Rolex watch on February 25, 1983. The defendant offered evidence only through his form financial affidavit which indicated that he was unemployed and had last worked in May, 1984 earning $120 per month. The defendant claimed he had had no other income for the past twelve months from any source other than his wife's income of $280 per month, and that he lived with his in-laws, owed creditors "over $100,000," had a default judgment entered against him, had no cash, owned no real estate or other valuable property and had only a "possible" interest in uncollectible notes