**OK NAM KIM, Appellant**

**v.**

**AMERICAN SAMOA GOVERNMENT, Appellee**

High Court of American Samoa
Appellate Division

AP No. 5-90

December 17, 1990

Before KRUSE, Chief Justice, REES, Associate Justice, FONG*, Associate Justice, VAIVAO, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Appellant. Togiola T.A. Tulafono
 For Appellee, Jeffrey Buckner, Assistant Attorney General

This is an interlocutory appeal from the denial by the District Court of a court-appointed Korean interpreter for appellant's trial on the charge of driving under the influence of alcohol. The appellant concedes that he is not indigent. There is no evidence in the record before us, with the possible exception of the fact that appellant's counsel requested the appointment of an interpreter, of the extent of appellant's ability or inability to speak or understand English or Samoan.

I.    *Jurisdiction*

The appellee argues that we are without jurisdiction over this appeal because there has been no "final decision" of the District Court. *See* A.S.C.A. § 3.0309.

---

*    Honorable Harold M. Fong, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

194

In general, an interlocutory order during the course of a trial or other judicial proceeding is not a "final decision" within the meaning of A.S.C.A. § 3.0309 and similar statutes. Such orders, even though they may be "fully consummated decisions" with respect to the issue. they address, "are but steps towards final judgment in which they will merge," and are therefore reviewable only by means of appeal from an adverse judgment in the main proceeding. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *see Deaver v. United States*, 483 U.S. 1301 (1987).

An interlocutory order is, however, final and therefore appealable if it falls within the "collateral order exception." This exception describes "that small class [of interlocutory orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate considerations be deferred until the whole case is adjudicated." *Cohen, supra*, 337 U.S. at 546. To fall within the collateral order exception, an order must (1) conclusively resolve the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from the final judgment in the main case. *Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988); *Coopers & Lybrand v. Livesay*, 458 U.S. 263 (1978).

There is no question that the instant order is "collateral" in the sense that it resolves a question that is separate and distinct from the merits of the action. No question raised by this appeal or by the decision below has any bearing on the merits of the criminal action itself, which have to do with whether appellant is guilty of driving under the influence of alcohol. The District Court's ruling on the question of an interpreter was also conclusive: the trial was about to go forward without an interpreter when appellant moved for a stay to accommodate the present appeal.

There is a serious question about whether this order would be effectively unreviewable upon final judgment in the criminal case. If the trial had taken place without an interpreter and had resulted in a conviction, an appeal from the conviction might have been taken on the same grounds asserted in the present appeal. An acquittal would have rendered appeal unnecessary, at least insofar as the harm appellant sought to avoid was limited to the possibility of conviction and punishment.

Collateral orders are, however, generally regarded as "effectively unreviewable" and therefore final --- notwithstanding the possible availability of a later appeal from an adverse judgment in the principal action --- when "substantial rights would be lost, if appeal were delayed until the main stream of the litigation is terminated." *Kowalski v. Holden*, 276 F.2d 359 (6th Cir. 1960). This principle has been applied, at least until recently, to the denial of court-appointed counsel in criminal cases. *See United States v. Harris*, 707 F.2d 653 (2d Cir.), *cert. denied*, 464 U.S. 997 (1983); *United States v. Deutsch*, 599 F.2d 46 (5th Cir.), *cert. denied*, 444 U.S. 935 (1979). Such treatment has been based partly on the risk that uncounseled defendants would unwittingly surrender substantive and procedural rights in ways that would tend to evade later appellate review, and partly on the idea that "the unedifying spectacle of a trial of a lawyerless defendant" is a harm separate from that represented by any conviction and sentence that might result. *Harris, supra*, 707 F.2d at 657; *see Deutsch, supra*, 599 U.S. at 47-48. In this respect, the right to counsel may resemble the right not to be "placed in jeopardy" twice for the same offense or the right of a legislator not to "be questioned" with respect to an official speech or debate. *See Abney v. United States*, 431 U.S. 651 (1977) (denial of pre-trial motion to dismiss on double jeopardy grounds is an immediately appealable collateral order); *Helstoski v. Meanor*, 442 U.S. 500 (1979) (denial of motion to dismiss grounded in the Speech or Debate Clause is immediately appealable). *See also Segni v. Commercial Office of Spain*, 816 F.2d 344, 345 (7th Cir. 1987):

> Where the right asserted by way of defense to a lawsuit is (or includes) a right not to bear the burden of the suit itself, regardless of outcome, the denial of that right, as by denying a motion to dismiss the suit, is appealable immediately by virtue of the collateral order doctrine. An appeal after judgment would come too late to protect the right.

A fairly recent United States Supreme Court case on a related question raises serious doubts about whether the federal courts will continue to regard denials of appointed counsel as immediately appealable. In *Flanagan v. United States*, 465 U.S. 259 (1984), the Court ordered the dismissal for lack of jurisdiction of an interlocutory appeal from a pre-trial order disqualifying defendants' counsel for conflict of interest. The Court observed that defendants were not asserting "a right not to be tried," but merely "a right not to be convicted in certain circumstances." *Id.* at 267. A successful appeal from an order

disqualifying a particular counsel would not result in dismissal of the prosecution, but only in a delayed trial; allowing immediate appeal from such an order "thus would severely undermine the policies behind the final judgment rule." *Id.* at 270. Moreover, "postconviction review is concededly effective" to the extent that the asserted right to representation by a particular lawyer "is like the Sixth Amendment rights violated when a trial court denies appointment of counsel altogether . . . ." *Id.* at 268. "No showing of prejudice need be made to obtain reversal" when a court has improperly refused to appoint counsel, "because prejudice to the defense is presumed." *Id.*

The only federal court of appeals to consider the question since *Flanagan* has held that denials of appointed counsel are no longer immediately appealable, because the earlier contrary cases "do not survive the rationale" of *Flanagan*. *United States v. Celani*, 748 F.2d 363, 365 (7th Cir. 1984). The *Celani* court placed special emphasis on the point that an improper denial of counsel would entitle defendant to a reversal on appeal even if he could not show that it caused any actual prejudice to his defense. "The 'effective reviewability' of an order on appeal depends on whether a showing of prejudice to the defense is required to obtain a reversal." *Id.* (citing *Flanagan*). Since no such showing is required, "immediate appealability is not necessary to protect the defendant's rights regarding appointment of counsel prior to trial." 748 F.2d at 365.

The constitutional and statutory right to an interpreter asserted in the present appeal is closely related to the right of an indigent person to appointed counsel. To require someone to undergo a criminal trial without a court-appointed interpreter in circumstances where such appointment was required by law -- if, for instance, the defendant were penniless and understood not a word of the proceedings against him --- might well occasion palpable injury beyond the possibility of conviction and sentence. "Trying a defendant in a language he does not understand has a Kafka-like quality," and it is at least in part to avoid forcing people to undergo such an ordeal that courts have sometimes recognized a constitutional right to a court-appointed interpreter. *United States v. Desist*, 384 F.2d 889, 902 (2d Cir. 1967); *see United States ex rel. Negron v. New York*, 434 F.2d 386 (2d Cir. 1970).

In this respect the denial of an interpreter is unlike the denial of the "right" to a particular lawyer with which the Court was confronted in *Flanagan*. A person required to undergo a trial with the assistance of competent counsel other than the one he most prefers may not enjoy the

proceeding, but an acquittal or a reversal on appeal will do much to help him get over his disappointment. The same cannot be said for someone who has been forced, in violation of his constitutional or legal rights, to endure a "Kafka-like" experience such as that described in *Desist*. Moreover, there is a significant chance that a defendant unable to understand anything the judge, the witnesses, or his own counsel was saying would enter a guilty plea that would be uninformed, effectively uncounseled, and yet most unlikely ever to be reviewed on appeal. *Cf. Deutsch*, *supra*, 599 F.2d at 48.

We note further that the denial of an interpreter, unlike the denial of appointed counsel, has not generally been held to justify reversal on appeal in the absence of a showing of actual prejudice to the defense. *See, e.g., Cervantes v. Cox*, 350 F.2d 855 (10th Cir. 1965). Appellant in the present case asserts a broad constitutional and statutory right to appointment of an interpreter upon request. This right, as asserted by appellant, is absolute; it does not depend on a finding that an interpreter is necessary to guarantee a fair trial, and it is available even to a defendant who speaks some English or Samoan and who therefore might manage to survive a trial without demonstrable prejudice. In such a case the denial of an interpreter (assuming that there really was an absolute right to one) would constitute a violation of an independent substantive right, and yet reversal on appeal would not be an appropriate remedy. In this respect the right being asserted in the present case differs importantly from the right to appointed counsel. *See Celani*, *supra*, at 365-66; *cf. Flanagan*, *supra*, 465 U.S. at 268.

Despite doubts occasioned by the Court's opinion in *Flanagan* -- and despite our strong agreement with the sentiments expressed in that opinion to the effect that criminal litigation should be expeditious and not piecemeal --- we conclude that the right being asserted in the present appeal is not merely a right not to be *convicted* under certain circumstances, but a right not to be *tried* under such circumstances. We further conclude that at least some violations of the asserted right would not be remediable by reversal on appeal, or even by acquittal. We therefore hold that the District Court's order denying the appointment of an interpreter is within the small class of pre-judgment orders that are "final decisions" immediately appealable under A.S.C.A. § 3.0309.

## II.     *The Right to An Interpreter*

Neither the due process clause of the Fifth Amendment to the United States Constitution nor the right to a fair trial guaranteed by the

Sixth Amendment confers upon a *non-indigent* defendant the right to a court-appointed and government-financed interpreter. *United States v. Martinez*, 616 F.2d 185 (5th Cir. 1980); *Desist, supra.* Even an indigent defendant is entitled to a court-appointed interpreter only insofar as such appointment is necessary to enable him to understand the proceedings and to communicate with his counsel; the trial judge has wide discretion in deciding whether to appoint an interpreter and need not accept as dispositive the defendant's assertion that he needs one. *Cervantes v. Cox, supra; see Valladares v. United States*, 871 F.2d 1564 (11th Cir. 1989). "The trial court must balance the defendant's rights to confrontation and effective assistance against the public's interest in the economical administration of criminal law, and the court's balancing is reversible only on a showing of abuse." *Valladares*, 871 F.2d at 1566.

The American Samoa Constitution contains a due process clause identical to its federal counterpart, as well as a fair trial guarantee substantially similar to that provided by the Sixth Amendment. *See* Rev. Const. Am. Samoa art. I § § 2, 6 ("In all criminal prosecutions, the accused shall have the right . . . to be confronted with the witnesses against him . . . and to have the assistance of counsel for his defense."). We know of no evidence that those who ratified and promulgated the territorial constitution in 1967 meant these provisions to derogate from the settled interpretations of the sources upon which they drew. Moreover, we find the federal jurisprudence most persuasive. Notwithstanding the strong policy against trying any defendant in a language he does not understand, a defendant's ability to remedy the situation by providing his own interpreter "dissipates substantially --- perhaps completely --- any feeling of unease." *Desist, supra*, 384 F.2d at 902.

> [I]f the real point is guarantee of a fair trial, . . . [and if the defendant] denied himself the interpreter and stands on his own right to do so, does not the issue become solely who should have paid for one? . . . [W]e doubt that [the] claimed absolute constitutional right to an interpreter is stronger than the absolute right to a court-appointed counsel; the latter is held only by the indigent . . . .

*Id.* We hold that the American Samoa Constitution guarantees a court-appointed interpreter only to an indigent defendant who will otherwise be unable to understand the proceedings against him or to communicate with his counsel.

Appellant also suggests that the employment by the Court of Samoan-English interpreters but not of Korean-English ones is a "racially based classification" which deprives appellant of equal protection f the laws. On the contrary, the practice simply reflects the cultural and juridical history of American Samoa. Court proceedings are conducted primarily in English for a number of practical reasons having to do with the Territory's relationship to the United States, but Samoan is the principal language of over ninety percent of the population. For the same reasons that a court or other official institution in the United States does not deprive anyone of equal protection by doing business in only one language, such an institution in Samoa does not deprive anyone of his constitutional rights by providing its basic services in two languages (with supplemental interpretation for those who genuinely need and cannot afford it) rather than in seven or seventeen.[1]

Finally, appellant contends that his right to a court-appointed interpreter is guaranteed by A.S.C.A. § 3.0205, a territorial statute entitled "Appointment of clerk and other officers." This section provides that the High Court "shall have a clerk, interpreters, who may also be deputy clerks," and various other employees who shall be appointed by the Chief Justice and shall have salaries fixed by him. Assuming for the sake of argument that this statute requires the Chief Justice to appoint interpreters not only for the High Court but also for the District Court,[2] it must be read in its context.

A.S.C.A. § 3.0205 deals with the method of appointment of permanent court employees; those with "fixed" salaries, who are

---

[1]     The above analysis assumes that the federal equal protection clause has some application to the question at hand. It should be noted that "the extent to which the equal protection clause of the Fourteenth Amendment applies in the territory is unclear." *Macomber v. American Samoa Government*, 12 A.S.R.2d 29, 30 (1989). *See generally Banks v. American Samoa Government*, 4 A.S.R.2d 113, 123-28 (1987) (discussing the extent to which federal equal protection doctrine applies in American Samoa under the doctrine of *The Insular Cases*).

The Revised Constitution of American Samoa, promulgated in 1967 under the authority of the Secretary of the Interior, contains no equal protection clause.

[2]     A.S.C.A. § 3.0205 applies on its face only to the High Court. A.S.C.A. § 3.0307, the section regulating the appointment of officers of the district court, provides that the Chief Justice "may" assign High Court employees to work part-time or full-time for the district court, and that he may also appoint such other district court officers as he "may consider necessary."

200

appointed by the Chief Justice and are "subject to removal" by him. The reference to "interpreters, who may also be deputy clerks" is obviously also a reference to regular Court employees. Moreover, at the time of the enactment of this law in 1962, the Court had been in existence for over sixty years; it had always employed Samoan-English interpreters and had never employed any other kind. The language of section 3.0205 is hardly the sort of language a legislature would use to impose on the Court a new and important obligation to find, employ, and compensate special *ad hoc* officers whenever a litigant should demand them. Nor has this been the practical construction of the law during the thirty years since its enactment; neither the Fono nor the United States Department of the Interior has ever appropriated money to pay such *ad hoc* officials, and the Court has never appointed them except in cases involving indigents, where such appointment was compelled by the constitutional guarantees of due process and a fair trial.

Accordingly, the order of the District Court is AFFIRMED.