**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Noehl SCHMITZ,
Defendant-Appellant.**

No. 75–2056.

United States Court of Appeals,
Ninth Circuit.

Sept. 9, 1975.
Appendix Oct. 22, 1975.

Robert Sarno, Hollywood, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

## REVIEW AND TENTATIVE FINDINGS OF FACT

CHAMBERS, Chief Judge:

Schmitz is an income tax objector. He shows devout dedication and seems not to be a mean fellow. But he has been convicted of income tax irregularities.

His defiance of the federal income tax laws has landed him in the Federal Correctional Facility at Lompoc, California. There, obviously his behavior is accepted as benign and he seems to have few restrictions imposed on him.

He plants his feet on this ground: The only thing one can get now for working for an employer is a federal reserve note or a check for which one can get only federal reserve notes. This, he says, is only printing press money, i. e., phoney money. If he could get old fashioned paper silver certificates or older gold certificates for his labor, he would be satisfied and pay his income taxes.

His fixation has led him to file income tax exemption certificates with his employer which asserted he would have no taxable income. And he declined to file year-end personal returns, as I understand it. And, he has for some time been earning wages which almost everyone else would consider taxable income.

At his trial a deputy public defender was appointed under the Criminal Justice Act as his adviser. He and the defender worked on the active defense in tandem, one pedalling forward, the other back-pedalling.

We seem to have a case of no defense to the charges in chief but only an imagined defense to the charges of the indictment. But it is said the trial judge stumbled along the way: he didn't provide a "Magna Carta jury," he erred in his instructions, and he was irascible to the extent of depriving defendant of a fair trial.

█ Of course, Bushel's case settled it that a judge is not permitted to force a jury to find a defendant guilty, but at the other end of the pole the jury has the inherent power to pardon one no matter how guilty. It exists, although we do not usually admit it.

So, it is that the alleged error of temper may have prevented the jury from violating its oath.

As stated above, at the trial, Schmitz represented himself, assisted by the federal public defender as an adviser. On appeal, he represents himself and he has "accepted" co-counsel provided by his brother, Fred Schmitz, of Montana. Co-counsel is Robert Sarno of the firm of Fleishman, McDaniel, Brown & Weston. Sarno has already received $2,000 on account and will receive, he says, $3,000 more from the brother for his legal services. (Parenthetically after a motion for this and a motion for that presented alternately by Schmitz and by Sarno the Court has been subjected to cross fire. So an order has been entered that both must sign all offerings before the clerk receives them for filing.)

Also, it appears that Schmitz by some means, probably other than his own, can provide bail for himself but he contends he can't find a dollar for the transcript of evidence on appeal. So he wants the U. S. Treasury to pay for his transcript on appeal. This is in an amount of not to exceed $1575.[1]

Of course, the undersigned practiced law in a day when he had to defend the Schmitzes by appointment for no pay at all and when he had to be out of pocket as well. It was a day when, if you believed in a defendant's cause, you did not send him away for lack of money. It has been suggested to Mr. Sarno that his firm might want to pay for the transcript out of its $5,000. But he says that the partners in Fleishman, McDaniel, Brown & Weston, a California professional corporation, wouldn't permit him to do so. So it goes when lawyers incorporate. Maybe so, but any judge of this Court could find Schmitz excellent counsel even in the present stage of inflation for $3,000.00, leaving $2,000.00 for costs.

In the meagre record, now before us, the trial judge refers to transfers of property by Schmitz. At least, a house and a fairly modern truck were involved.

Under the circumstances, it seemed well to hold a hearing at Santa Maria, California, a short distance from Lompoc, on August 22, 1975. The purpose was to see if it was possible to negotiate an agreed statement of facts for the appeal and to inquire into the financial condition of Schmitz including his "ex-property."

Schmitz made quite a few statements about the house and car and the transfers "in trust." He talked but was not under oath. Of course, under the Criminal Justice Act we do not require a man to sell his home or his watch. But when the home is "transferred in trust" to daughters we need to look closely, and a transfer in trust of a truck now seemingly used by a daughter for a recrea-

---

1. We have an uncertainty as to amount of money required for the transcript for the appeal. Estimates vary from $600.00 to $1575.00. At the Santa Maria hearing on August 22, 1975 we proceeded on the assumption that the amount was $600.00. Therefore, if Schmitz pays or causes to be paid $600.00 to the reporter, we will make some other arrangements for the balance, if any, required. After the appeal is heard, the Court may consider whether Schmitz should reimburse the difference.

tional vehicle especially needs to be looked at.

Counsel Sarno advises that if we probe further he will probably have to plead the fifth amendment for Schmitz. So be it. The only reason which Schmitz gives for his transfer (I summarize) is that he has been a life long fatalist or hypochondriac fearing death soon.

■ As I see it now, Schmitz has put his conclusory affidavit of poverty into question, and I am not yet ready to grant relief under the Criminal Justice Act for the transcript. The burden of proof is his.

On the possibility of an agreed statement of facts, counsel Sarno says he was not the trial lawyer. So he cannot, he says, possibly agree to a statement. He has been offered a transcript of the colloquies of the trial judge which should be all he needs. The colloquy should be more favorable to Schmitz out of context than in it on this issue of irascibility.

The continued hearing set for Lompoc for September 11, 1975 is vacated. It will be reset for an early date on motion of appellant.

Tentatively, and only tentatively, I am of the view:

1. That more must be shown to proceed under the Criminal Justice Act.

2. That counsel and Schmitz could agree to an agreed statement of facts without prejudice to Schmitz.

3. That the appellant may not be entitled to bail because it seems doubtful that he is proceeding with due diligence on his appeal.[2]

4. That appellant may be needlessly subjecting his appeal to dismissal if it is found he is not proceeding with due diligence.

The foregoing findings may be shown to be wide of the mark if Schmitz asks for a further hearing and he assumes the burden of proof on his financial status. I am puzzled that as of now there is an indication that he would open his proof with a fifth amendment claim, a great and beneficial shield, but not much of a sword.

This review along with the transcript of the Santa Maria hearing will be filed in the record of this case for the use of any who may pick up other facets of the case.

### APPENDIX

The following passages from the transcript of the hearing indicate the attitudes expressed by Mr. Schmitz during the hearing toward the question of bail pending appeal.

The following is from page nineteen of the Reporter's Transcript of the hearing held in this matter at Santa Maria, California on August 22, 1975.

THE DEFENDANT: And then the bail right now is moot, because I only have fifty more days to spend in Lompoc, and I'm willing to spend the fifty more days in Lompoc without causing any other, you know, work on the bail motion.

THE COURT: You aren't saying you like it over there, are you?

THE DEFENDANT: Well, your Honor, it isn't too bad, except for the revolutionary music which—what they call rock music, and the officials over there would like to get rid of that, too, but the radios bring it in. . . .

The following conversation is from pages 45–47 of the transcript of the same hearing:

(THE COURT): Are you prepared to sign his application for bail? For You?

THE DEFENDANT: Do I have a copy of it?

MR. SARNO: I don't know. I'm not sure.

THE DEFENDANT: Well, your Honor, I don't recall that I have a copy of it, so we haven't cooperated too well

2. As soon as the transcript of the Santa Maria hearing is available, an appendix will be attached to these findings to show the confused attitude of Schmitz and his counsel on bail.

together as co-counsel, and I have been —everything that's put on the record in my case, I've been sending it to Mr. Sarno, so he would put it on record, so we would have cooperation between the two co-counsel, myself and Mr. Sarno.

THE COURT: Well, and of course you put him——

THE DEFENDANT: But in this case, in the bail case, I did not see it, and I don't recall having a copy of it.

THE COURT: No, but he has put it on here, John Noehl Schmitz.

THE DEFENDANT: That's my name.

THE COURT: Fleischman, McDaniel, so and so by Sarno. I want you to either sign it or repudiate it, Mr. Schmitz.

THE DEFENDANT: Well, I'm inclined at the present time—I don't like to repudiate what Mr. Sarno has put on the record, but like I said before, there's only fifty days left. Naturally, I would like to be out on bail; however, I would not be able to pay for the bail, and whether my brother would pay for the bail, that's another question again, so let's put it on record that we do not request bail at this time, and since the time is to run out on October 15, with the fifteen days camp time, that I do not ask for bail at this time.

THE COURT: All right.

MR. SARNO: Well, let the record also reflect that I'm not withdrawing the bail motion.

THE COURT: Well, now, wait a minute. Wait a minute.

MR. SARNO: I think, your Honor, that with respect to this colloquy, at the moment with respect to the bail issue, I certainly would like to talk to Mr. Schmitz about it. I think perhaps that there is a bit of confusion about this.

As I understand it, Mr. Schmitz is saying yes, indeed, he believes that he is entitled to bail on appeal. He certainly would desire bail on appeal, if the Court would set an appropriate, nominal bail on appeal, given the circumstances. He is also saying, which I don't think is contradictory, "I don't know if I would be able to raise the amount of money that the Court would fix as bail on appeal," and in light of that you know—

THE COURT: No, we're up here arguing he doesn't know his own mind—

MR. SARNO: I don't think I'm arguing that, your Honor. I think that perhaps if we had a conversation with respect to this issue, I'm sure Mr. Schmitz would say that he would certainly like the Court to fix bail on appeal. If he can't meet the bail, then surely he will sit the next fifty days in jail.

THE COURT: That isn't what you said, is it, Mr. Schmitz?

THE DEFENDANT: Well, your Honor, I realize that the money—I'm a money conscious person. I've been that way since I finished high school in 1930. And I know that three hundred and fifty Federal Reserve Notes is not easy to come by today, and if the Court sets three hundred and fifty, my brother, since he got his three hundred and fifty back from the District Court when he set bail for me on October 10, 1974, he would likely put the other three hundred and fifty again, but how do I know that the Court will set three hundred and fifty.

If the Court sets three hundred and fifty, then I would like to make a motion to strike what I've said and change my request to be on bail, if the bail will be the same. And in that case, I would go along with co-counsel.