**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sidney BARCELON,**
**Defendant-Appellant.**

**No. 85–2100.**

United States Court of Appeals,
Tenth Circuit.

Nov. 18, 1987.

William D. Welch, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for plaintiff-appellee.

Ralph B. Rhodes (Christopher C. Beasley with him on briefs), Denver, Colo., for defendant-appellant.

Before LOGAN, McWILLIAMS and STEPHEN H. ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The major issue presented by this appeal is whether the district court "appropriately inquired" into appellant Sidney Barcelon's ability to pay attorney's fees under the Criminal Justice Act, 18 U.S.C. § 3006A (1982) (the "Act"), before denying his re-

quest for appointed counsel.[1] For the reasons stated below, we remand to the district court for further proceedings.

## I.

On October 10, 1984, Barcelon, was indicted along with forty-four other defendants and charged with one count of conspiracy to distribute a controlled substance and two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). Barcelon retained David Doyle as his counsel and Doyle entered his appearance as Barcelon's attorney on October 19, 1984. Four months later Doyle sought permission to withdraw as counsel, citing "irreconcilable differences" with Barcelon and Barcelon's failure to pay attorney's fees.

Shortly thereafter, Barcelon filed a pro se request for court-appointed counsel based on his financial inability to obtain an attorney. In support of his motion, Barcelon submitted an affidavit and financial statement on March 4, 1985. After examining Barcelon's financial statement, but making no further inquiry into his financial ability to retain counsel, the court, on March 6, denied both Doyle's motion to withdraw and Barcelon's motion for appointed counsel. Barcelon subsequently moved the court for the right to represent himself pro se and for a continuance of the trial date. Following a hearing on March 14, 1985, this motion was granted and Doyle was permitted to withdraw as Barcelon's counsel.

At trial Barcelon represented himself and was found guilty on two of the three counts brought against him. He now appeals these convictions asserting that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment, because the district court refused Barcelon's request for appointment of counsel. The appeal centers on whether the district court sufficiently inquired into Barcelon's financial ability to retain counsel.[2]

Barcelon's sworn financial statement showed that he had assets of $600 in cash, personal property valued at $3000, $20,000 owed to him "from gambling," and an insurance policy with a $1000 cash value. His liabilities included a $5,500 debt to a sign company, a $14,000 loan from his father, an $8,000 loan from his mother, and a $6,650 debt to Doyle for legal services rendered. Barcelon stated he was unemployed at the time he filed the affidavit, and had not been employed since the previous September. He listed prior and continuing seasonal employment from mid-March to September in sales for a sprinkler and landscaping company, and stated the employment would recommence "in approximately March, 1985," i.e., the current month. He further stated that "there is no income on the date of this affidavit." Monthly income, when employed, was listed as $1,500, although a notation was added that "wages vary."

For expenses, the financial statement listed $250 monthly rental paid, "when em-

---

**1.** The wiretap issues which appellant incorporated by reference in his appeal were disposed of by this court in *United States v. Apodaca,* 820 F.2d 348 (10th Cir.1987).

**2.** Barcelon also claims that the district court employed the wrong financial standard in denying him appointed counsel under the Act. The court at one point used the term "indigent." Barcelon correctly points out that indigency is not a requirement of the Act. We reject the premise that the district court required a showing of indigency. The standard established by the Act, one of financial ability to obtain counsel, was explicitly applied by the court in its March 6, 1985 order denying counsel to Barcelon. ("Examination of defendant's affidavit and financial statement discloses *defendant has the financial ability to pay for counsel.*" R.Supp.

Vol. I, Tab 2 (emphasis added)). That the district court subsequently employed the term "indigent" in explaining its denial to Barcelon does not show that it employed the wrong standard where the court was merely using the term as "shorthand" to describe the standard established by the Act. *See United States v. Harris,* 707 F.2d 653, 661 n. 8 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983) ("Though the magistrate used the term 'indigency,' we believe that this was merely a 'shorthand expression' of financial inability to afford counsel."); *United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982) ("[T]he courts often use 'indigency' as a shorthand expression to describe the problem of the appointment of counsel for those who cannot afford to hire counsel.").

ployed," to his mother, with whom he lived, $300 per month for food, a $45 monthly life insurance payment, and "$400.00 per month child support (actually pays $200 because one child resides with defendant)." R.Supp.Vol. I, Tab 1 at 3. According to Barcelon's statement, these monthly expenses totalled $995, but that amount included $400 for child support which was explained by the accompanying note to actually be $200. Thus, total monthly payments were only $795 out of expected income of $1,500. The problem was that Barcelon's scheduled trial would be expected to interfere with his employment, but the record does not disclose to what extent.

After denying Barcelon's request for appointed counsel, the district court explained:

> THE COURT: Well, do you understand why I denied your request for appointed counsel?
>
> THE DEFENDANT: No, sir, I don't.
>
> THE COURT: All right, I examined your financial affidavit and found that you are not indigent as required. It seems to me that while the liquidity of your assets may be questionable, it certainly appears to me that you do have assets which you could use to compensate counsel, and under the statute I have no authority to appoint counsel for you.
>
> THE DEFENDANT: Okay, I don't understand those—
>
> THE COURT: Well, that's a matter that I have already decided. There is no need to debate on that.

R.Supp.Vol. II at 4–5. The court made no findings or further explanation of the basis for its decision, including whether or not it was relying on Barcelon's assets, or expected income, or a combination of the two. Therefore, our review is necessarily restricted to Barcelon's sworn financial statement.

Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel. *See United States v. Harris,* 707 F.2d 653, 660 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *United*

*States v. Peister,* 631 F.2d 658, 662 (10th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Ellsworth,* 547 F.2d 1096, 1098 (9th Cir.1976), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 247 (1977); *United States v. Kaufman,* 452 F.2d 1202 (4th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). And, appellate courts are required to employ the clearly erroneous standard in reviewing trial court determinations as to whether an applicant qualifies for counsel. *See United States v. Binder,* 794 F.2d 1195, 1201 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986); *Harris,* 707 F.2d at 660; *United States v. Deutsch,* 599 F.2d 46, 49 n. 5 (5th Cir.), *cert. denied,* 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979); *United States v. Rubinson,* 543 F.2d 951, 964 (2nd Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); *United States v. Kelly,* 467 F.2d 262, 266 (7th Cir.1972), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed. 2d 393 (1973). However, in this instance our review is directed to the adequacy and manner of the inquiry by the district court as the foundation for its determination, rather than to the court's conclusion. Therefore, the clearly erroneous standard does not apply.

## II.

The Act was passed by Congress in 1964 to insure that defendants who are financially unable to afford trial services necessary to an adequate defense are provided them in accordance with the Sixth Amendment to the United States Constitution. Application of the Act carries both a statutory and a constitutional mandate. *See Anaya v. Baker,* 427 F.2d 73, 75 (10th Cir.1970) (application of the Act governed by mandates of the Sixth Amendment); *see also United States v. Harris,* 707 F.2d 653, 662 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983) ("[F]orcing a criminal defendant to go to trial pro se" without conducting an appropriate inquiry into his financial ability to afford counsel

"constitutes a denial of that defendant's sixth amendment right to counsel."); *United States v. Cohen,* 419 F.2d 1124, 1126 (8th Cir.1969).

Counsel must be appointed under the Act if the court is satisfied after "appropriate inquiry" that the defendant is "financially unable to obtain counsel." [3] "Appropriate inquiry" necessarily varies with the circumstances presented, and no one method or combination of methods is required.[4] Investigation of the applicant's assets, liabilities, income and obligations alone may constitute sufficient inquiry. *See, e.g., United States v. Kelly,* 467 F.2d 262, 265–66 (7th Cir.1972), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393 (1973); *United States ex rel. Beard v. Rundle,* 434 F.2d 588, 589 (3rd Cir.1970); *Ybarra v. Wolff,* 571 F.Supp. 209 (D.Nev.1983); *United States v. Gipson,* 517 F.Supp. 230 (W.D. Mich.1981). But courts have taken into account a broad range of additional considerations where warranted.[5]

In cases such as this, where the bare listing of the applicant's financial position discloses marginal liquidity, two such additional considerations are suggested by the authorities. The first deals with an applicant's accessibility to listed assets for purposes of paying counsel. Where it appears that income is insufficient to pay counsel and that assets may be illiquid or otherwise unavailable, the court should expand its inquiry to explore the availability of the assets. *See, e.g., United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982) (reversible error to deny non-indigent defendant appointed counsel when defendant's assets were encumbered); *United States v. Cohen,* 419 F.2d 1124, 1127 (8th Cir.1969) (district court under a duty of further inquiry after defendant indicated that all of his assets were tied up in land and not available for purposes of obtaining counsel); *cf. Wade v. Lockhart,* 763 F.2d 999 (8th Cir.1985) (defendant's one-third interest in 182 acres of land from which he could not obtain benefits for several

**3.** The language of the Act states: "[U]nless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him." 18 U.S.C. § 3006A(b) (1982). In 1986 the Act was amended. The only changes to this sentence substituted the word "person" for the word "defendant" "to reflect the fact that counsel may be appointed for habeas petitioners and material witnesses as well as for persons charged with a crime." H.R.Rep. No. 417, 99th Cong., 2nd Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 6165, 6175. The underlying standard of "financial inability" to obtain counsel was not changed.

**4.** In submitting the Act to Congress in 1963, then Attorney General Robert F. Kennedy stated:

the requirement of an 'appropriate inquiry' to determine the defendant's financial need is intended to assure that the court, by *hearing, affidavit or other suitable investigation,* will scrutinize all applications for representation. H.R.Rep. No. 864, 88th Cong., 1st Sess., *reprinted in* 1964 U.S.Code Cong. & Admin.News 2990, 2996. (emphasis added).

**5.** Other factors which courts have considered include: the needs of the defendant and his family, *United States v. Harris,* 707 F.2d 653, 661 (2nd Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *U.S. v. Bracewell,*

569 F.2d 1194, 1200 (2nd Cir.1978); the amount the defendant posted as bail, *see* VII *Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases* ¶ 2.04 at 2–11 (1987); the expense and extent of legal services which the defendant requires, *Harris,* 707 F.2d at 661, *United States v. Coniam,* 574 F.Supp. 615, 618 (D.Conn.1983); *United States v. Hennessey,* 575 F.Supp. 119, 121 (N.D.N.Y.1983), *aff'd* 751 F.2d 372 (2nd Cir.1984); amounts given the defendant by others for limited purposes only, *Bridges v. United States,* 588 F.2d 911, 912 (4th Cir.1978); *United States v. Bursey,* 515 F.2d 1228, 1236 (5th Cir.1975); whether the defendant has secreted assets, *United States v. Rubinson,* 543 F.2d 951, 964 (2nd Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); *United States v. Schmitz,* 525 F.2d 793, 794–95 (9th Cir.1975); and the availability of income to the defendant from other sources such as a spouse, *United States v. Caudle,* 758 F.2d 994 (4th Cir.1985), or trusts, estates or the like. *See, e.g., United States v. Kahan,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974); *Schmitz,* 525 F.2d at 794–95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility. *See United States v. Binder,* 794 F.2d 1195, 1202 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986); *United States v. Kelly,* 467 F.2d 262, 266 (7th Cir.1972); *United States v. Martinez–Torres,* 556 F.Supp. 1275, 1280 (S.D.N.Y.1983); *United States v. Wright,* 478 F.Supp. 1178 (S.D.N.Y.1979).

months was insufficient to defeat his claim for appointed counsel).

Barcelon's principal asset was $20,000 owed him "from gambling." Barcelon contends that because the debt was still outstanding, and because gambling debts by their very nature are likely not to be paid, this money was unavailable to aid him in obtaining counsel. The government points out that gambling debts incurred in not-for-profit social activities are legally enforceable in Colorado, *see Houston v. Younghans*, 196 Colo. 53, 580 P.2d 801 (1978) (court allowed recovery of $165 gambling debt), and accordingly that the debt was a legitimate asset belonging to Barcelon. It is not clear from *Younghans* that a $20,000 gambling debt, about which Barcelon gives no information in his statement, would qualify as a social gambling debt enforceable under Colorado law. Certainly the amount alone suggests otherwise. However, even if the debt does qualify as an asset belonging to Barcelon, its existence is not enough to disqualify him from obtaining court-appointed counsel if the sum is unavailable to assist him in hiring an attorney. The court itself may have recognized the unavailability of Barcelon's funds when it noted, "[i]t seems to me that while the liquidity of your assets may be questionable, it certainly appears to me that you do have assets which you could use to compensate counsel." R.Supp.Vol. II at 4–5. However, absent other sources of funds, the nature of the asset called for further inquiry into its actual availability.

The second consideration is whether or not the applicant has only partial ability to pay for counsel and, as a consequence, is entitled to appointed counsel. In *Wood v. United States*, 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967), the Supreme Court required such an inquiry, stating:

> Before this Court the Solicitor General has conceded that the record does not convincingly show that there was adequate inquiry into the question of petitioner's financial ability to retain counsel, in that "the trial court should have explored the possibility that petitioner could afford only partial payment for the services of trial counsel and that counsel

be appointed on that basis, as the Criminal Justice Act permits (see 18 U.S.C. § 3006(A)(c) and (f)."

*Id.* at 20–21, 88 S.Ct. at 4. The case was remanded to the Court of Appeals for the Fifth Circuit which, in turn, remanded to the trial court for further examination. *Wood v. United States*, 387 F.2d 353 (5th Cir.1967). In doing so, the Fifth Circuit said:

> the case should be remanded to the District Court in order that it may make a full inquiry in the manner of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), into the financial ability of the defendant to retain counsel and *in order that the trial court may also fully explore the possibility that the defendant could afford only partial payment for the services of trial counsel.* Should it appear to the trial court, after a full exploration of the matter, that the defendant did not have the financial ability to retain counsel under the standards of the Criminal Justice Act, or *that he could afford only partial payment for the services of trial counsel, the District Court is directed to appoint counsel and grant the defendant a new trial.* On the other hand, should it appear that defendant did have the financial ability to retain counsel, the Court should render its decision accordingly and certify the result with accompanying findings of fact and conclusions of law to this Court.

*Id.* at 354 (emphasis added).

The Act makes provision for reimbursement of the government where counsel is appointed because an applicant is presently unable to pay counsel, but has prospects of doing so in time. 18 U.S.C. § 3006A(c) and (f) (1982). *See United States v. Coniam*, 574 F.Supp. 615 (D.Conn.1983) (Even though defendant had substantial annual income, where he lacked cash to pay retainer, counsel would be appointed for defendant, and he would subsequently reimburse the government.); *United States v. Hennessey*, 575 F.Supp. 119 (N.D.N.Y.1983), *aff'd*, 751 F.2d 372 (2nd Cir.1984) (Even though defendant's monthly income exceed-

ed his monthly expenditures by $1,010, where remaining disposable income was insufficient to fully pay counsel, defendant would be appointed counsel and would then reimburse the government.).

██ *Wood* gives no indication what information the financial affidavit initially considered by the district court contained, nor what questions the court asked the applicant concerning his financial status. Hence, it is impossible to tell how substantial the inquiry conducted by the district court was before it denied Wood appointed counsel, or the extent of funds available to the defendant. However, the facts of the case before us strongly suggest that the rule of *Wood* applies here to the extent that further inquiry should have been made. The fact that Barcelon's original attorney, Doyle, withdrew with $6,650 in unpaid fees itself suggests that Barcelon lacked ability to pay, although nonpayment could also have resulted from dissatisfaction with services, personal animosity, or other reasons. Barcelon did have $600 cash, but he also had obligations and was presently unemployed. All of those circumstances, coupled with the potential problem of asset liquidity, made it incumbent on the district court either to conduct a more complete investigation into Barcelon's ability to pay or only partially pay for counsel, or state in greater detail the basis upon which it concluded that Barcelon was able to employ counsel.

The government argues that even if the district court did not conduct an appropriate inquiry, its error was harmless first, because Barcelon knowingly waived his right to counsel by requesting to represent himself pro se, and, second, because the proof against Barcelon was so "overwhelming" that the appointment of an attorney would have made no difference to the out-

come of the trial. We reject both of these assertions.

██ Barcelon only requested to represent himself after his request for appointed counsel had been denied. This does not constitute a voluntary waiver of the right to counsel. *See, e.g., United States v. Martin-Trigona,* 684 F.2d 485, 490–92 (7th Cir.1982). If it did, every criminal defendant, unable to afford an attorney, whose financial situation had not been appropriately investigated would be deemed to have waived his constitutional right to counsel by representing himself.

We are equally unpersuaded by the government's argument that Barcelon would have been convicted even if he had been represented by counsel. The Supreme Court rejected a similar argument in *Wood,* 389 U.S. at 21, 88 S.Ct. at 4. And recently, the Supreme Court reemphasized that "No showing of prejudice need be made to obtain reversal in these circumstances [when a trial court denies appointment of counsel altogether] because prejudice to the defense is presumed." *Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984); *see also Wilson v. Mintzes,* 761 F.2d 275, 285 (6th Cir.1985); *United States v. Celani,* 748 F.2d 363, 366 (7th Cir.1984).

### III.

For the reasons stated, we remand this case to the district court with instructions to conduct a full inquiry into the financial status of Barcelon as of the time he filed his March 4, 1985 financial statement. If the court finds that Barcelon was financially able to obtain counsel at the time of his initial trial, the court should "render its decision accordingly and certify the result with accompanying findings of fact and conclusions of law to this court." *Wood,* 389 U.S. at 21, 88 S.Ct. at 4.[6]

---

6. Of course, Barcelon's argument that he did not knowingly waive his right to counsel does not apply if the district court determines that Barcelon had no right of appointed counsel to waive. If he proceeded pro se when he was financially able to afford counsel, Barcelon will have waived his right to counsel under the Sixth Amendment. *See United States v. Rubinson,* 543 F.2d 951, 964 (2nd Cir.1976), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); *United States v. Terry,* 449 F.2d 727, 728 (5th Cir.1971); *United States ex. rel. Davis v. McMann,* 386 F.2d 611, 618 (2nd Cir.1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968); *United States v. White,* 344 F.2d 92 (4th Cir.1965); *United States v. Arlen,* 252 F.2d

On the other hand, if the court determines after appropriate inquiry that at the time of trial Barcelon did not have the financial ability to retain counsel under the standards of the Criminal Justice Act, or that he could afford only partial payment for the services of trial counsel, the district court is directed to grant Barcelon a new trial.

This case is accordingly remanded to the district court for further proceedings consistent with this opinion.

491, 495–96 (2nd Cir.1958); *Spevak v. United States,* 158 F.2d 594, 596 (4th Cir.1946), *cert. denied,* 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272 (1947); *Buelow v. Dickey,* 622 F.Supp. 761, 766 (E.D.Wis.1985).