**UNITED STATES of America**

v.

**Bernard ZELENKA**

**No. 3:97–00158.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 24, 1999.

Thomas Wayne Watson, Federal Public Defender's Office Nashville, TN, Ernest Wilson Williams, Franklin, TN, William C. Roberts, Nashville, TN, John G. Oliva, Antioch, TN, for Bernard Zelenka.

William Mark Cohen, Office of the United States Attorney, Nashville, TN, for United States.

### MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court is the Government's Motion to Determine Defendant's Representation. (Doc. No. 31.) Defendant has responded to the government's Motion, (Doc. No. 36), and in turn, the government has filed a Reply, (Doc. No. 40). A hearing was held on this matter on August 4, 1999.[1] For the reasons stated below, the Motion is denied.

### I. BACKGROUND

Defendant Bernard Zelenka is charged in a twenty-two (22) count indictment with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A), engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957, and numerous violations of the wire fraud statute, 18 U.S.C. § 1343. In addition, pursuant to 18 U.S.C. § 982(b)(1), the government seeks forfeiture of Defendant's property allegedly involved in the aforesaid offenses. (see Doc. No. 1.)

The Indictment against Defendant was filed on December 18, 1997. (Doc. No. 1.) On December 15, 1998, Defendant was arrested and arraigned. (Doc. No. 5.) At the arraignment hearing, the magistrate found, based upon Defendant's financial affidavit, (Doc. No. 7), that Defendant was financially unable to employ counsel. Accordingly, counsel was appointed to represent Defendant. (Doc. No. 8.) Since his arraignment on December 15, 1998, Defendant has been represented in this matter by court-appointed counsel from the Office of the Federal Public Defender. Defendant's appointed counsel is Assistant Federal Defender Thomas Watson.

On May 21, 1999, Nashville attorney John G. Oliva filed a Notice of Appearance (the "Notice") on behalf of Defendant. (Doc. No. 25.) The Notice indicated that "friends of Mr. Zelenka" had retained the services of Mr. Oliva "to act as co-counsel with Assistant Federal Defender Tom Watson."[2] (*Id.*) In addition, the Notice stated that Mr. Oliva "has information, knowledge and belief that Mr. Zelenka has no control over, claim to or access to the funds used to retain undersigned counsel." (*Id.*)

On June 22, 1999, the government filed a Motion for Status Hearing to Determine Defendant's Representation. (Doc. No. 31.) According to the government, because a third party hired Mr. Oliva on Defendant's behalf, Defendant is no longer "financially unable to obtain counsel" within the meaning of 18 U.S.C. § 3006A(b) and thus no longer qualifies for court-appointed counsel. (*Id.* at 2.) As such, the government argues that permitting Mr. Watson to continue as Defendant's counsel constitutes a misuse of public funds. (Doc. No. 40 at 1.) Therefore, the government submits that Mr. Watson should be relieved as Defendant's counsel. (Doc. No. 31 at 3.)

In response to the government's Motion, Defendant contends that he remains eligible for court-appointed counsel despite the retainment of Mr. Oliva by a third party on his behalf. (Doc. No. 36. at 2.) Accordingly, Defendant asserts that Mr. Watson and Mr. Oliva should be permitted to proceed as co-counsel. (*Id.*) In support of this argument, Defendant maintains that the funds of a third party to which he does not

---

1. The transcript from this hearing, (Doc. No. 42), will hereinafter be cited as "Tr."

2. The individuals who retained Mr. Oliva on Defendant's behalf hereinafter will be referred to as the "third party payers."

have access, claim, or control, should not be considered when determining whether he remains financially unable to retain counsel under 18 U.S.C. § 3006A(b). (*Id.* at 5–6.) Defendant argues that instead, the inquiry should focus on those funds which Defendant is able to control and to which he possesses a claim of ownership or right. (*Id.*) Additionally, Defendant argues that the government has no standing to bring this Motion because Section 2.03(B) and (C) of the Guidelines prohibits the government from participating in the judicial inquiry into financial eligibility.[3] (*Id.* at 2–3.)

A hearing was held on this matter on August 4, 1999. At the conclusion of the hearing, the Court conducted an ex parte *in camera* meeting with Mr. Oliva, Mr. Watson, and Defendant to discuss the nature of the financial arrangement between Mr. Oliva and the third party who retained him, as well as to inquire into any possible conflicts of interest between Defendant and the third party.[4] In addition, the Court has reviewed *in camera* an affidavit filed by the third party payers, (Doc. No. 37), and an affidavit filed by Mr. Oliva detailing the work he has performed on Defendant's case, (Doc. No. 38).

## II. LEGAL STANDARD

■■■ The Sixth Amendment to the United States Constitution provides that "(i)n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defense." U .S. Const. amend. VI, cl. 6. This language encompasses a guarantee of the right of indigents to appointed counsel in felony prosecutions. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *see also Birt v. Montgomery,* 725

F.2d 587, 592 (11th Cir.1984) (en banc ) (stating that Sixth Amendment right to counsel has four components: right to have counsel, minimum quality of counsel, a reasonable opportunity to select and be represented by chosen counsel, and right to preparation period sufficient to assure minimum quality counsel). In 1964, Congress passed the Criminal Justice Act (the "CJA"), 18 U.S.C. § 3006A *et seq.* (West 1999), to insure that defendants who are financially unable to obtain the assistance necessary for an adequate defense are provided counsel in accordance with the Sixth Amendment. *See generally United States v. Santiago–Fraticelli,* 818 F.Supp. 27, 29 (D.Puerto Rico 1993) (stating that the CJA was passed to help facilitate the constitutional guarantee set forth in the Sixth Amendment); *United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982) (holding that district court's failure to conduct an inquiry into defendant's financial inability to obtain counsel in accordance with the CJA constituted reversible error); *United States v. Harris,* 707 F.2d 653, 662 (2nd Cir.1983) (stating that "forcing a criminal defendant to go to trial pro se" without conducting an appropriate inquiry into his financial ability to afford counsel under the CJA "constitutes a denial of that defendant's [S]ixth [A]mendment right to counsel"). Thus, application of the CJA is governed by the mandates of the Sixth Amendment. *Anaya v. Baker,* 427 F.2d 73, 75 (10th Cir.1970); *see also* Fed. R.Crim.P. 44(a).

■■■ Under the CJA, counsel must be appointed if the court is satisfied "after appropriate inquiry" that the defendant is "financially unable to obtain counsel." 18 U.S.C. § 3006A(b). The test for determin-

---

3. In addition, the Court notes that both parties have presented additional arguments, all of which the Court finds to be without merit.

4. The Court notes that it is satisfied there exists no conflict of interest between Defendant and the third party payers. During the *in camera* meeting, Mr. Oliva indicated that the third party payers understood that he

represents only Defendant and not the third party, despite their provision of funds for Mr. Zelenka's defense. In addition, Mr. Oliva indicated that should a conflict arise, he would promptly inform the Court of such a conflict. Accordingly, the Court need not consider this issue in resolving this matter.

ing whether a defendant is eligible for counsel under the CJA is not whether the defendant is indigent, but rather is whether he is "financially unable" to obtain counsel. *Kelly,* 467 F.2d at 266; *see also United States v. Moore,* 671 F.2d 139, 141 (5th Cir.1982) (noting that Congress was careful in the Criminal Justice Act to avoid the use of the term "indigent"); *Harris,* 707 F.2d at 660 (stating that the term "financially unable to obtain counsel" as used in 18 U.S.C. § 3002A(b) "means something less than indigency or destitution"); *United States v. Coniam,* 574 F.Supp. 615, 617 (D.Conn.1983) (noting that "the CJA couches an applicant's eligibility in terms of inability 'to obtain counsel,'" which is "broader language than the inability to pay for representation as is consistent with a more flexible right to counsel"); *see also* VII Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Appointment of Counsel in Criminal Cases § 2.04 (1993) (stating that a person is financially eligible for court-appointed counsel "if his net financial resources and income are insufficient to enable him to obtain qualified counsel").

In determining financial inability, courts generally consider a defendant's income, assets, liabilities and other obligations. *See, e.g., United States v. Kelly,* 467 F.2d 262, 265–66 (7th Cir.1972); *Ybarra v. Wolff,* 571 F.Supp. 209, 211–12 (D.Nev. 1983). In addition, courts have considered a broad range of additional factors, including: (1) the needs and basic living expenses of the defendant and his family, *Souder v. McGuire,* 516 F.2d 820, 823–24 (3rd Cir.1975); *Harris,* 707 F.2d at 661; (2) the expenses and extent of legal services required by the defendant, *Coniam,* 574 F.Supp. at 618; *Harris,* 707 F.2d at 661; (3) whether the defendant has secreted assets, *United States v. Rubinson,* 543 F.2d 951, 964 (2nd Cir.1976); *United States v. Schmitz,* 525 F.2d 793, 794–95 (9th Cir.1975); *United States v. Martinez–Torres,* 556 F.Supp. 1275, 1279 (S.D.N.Y. 1983); and (4) the availability of income available from the defendant's spouse,

*United States v. Salemme,* 985 F.Supp. 197, 201 (D.Mass.1997); *United States v. Caudle,* 758 F.2d 994, 996 (4th Cir.1985); or (5) from trusts and estates, *United States v. Kahan,* 415 U.S. 239, 243, 94 S.Ct. 1179, 1181, 39 L.Ed.2d 297 (1974); *Schmitz,* 525 F.2d at 794–95. Furthermore, courts have refused to appoint counsel where a defendant fails to provide sufficient information regarding his finances, *Harris,* 707 F.2d at 661–62, or where a defendant's claim of financial inability lacks credibility, *Kelly,* 467 F.2d at 266; *Martinez–Torres,* 556 F.Supp. at 1280; *United States v. Binder,* 794 F.2d 1195, 1202 (7th Cir.1986).

Although any doubts as to a defendant's eligibility should be resolved in the defendant's favor when initially considering the defendant's application for counsel, *see* VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases § 2.04, the CJA also provides for the removal of counsel at the court's discretion should it later be determined that a defendant is no longer financially eligible. Section 3006A(c) provides in relevant part:

> If at any time after the appointment of counsel ... the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it *may* terminate the appointment of counsel or authorize payment as provided in subsection (f), *as the interests of justice may dictate.*

18 U.S.C. § 3006A(c) (emphasis added).

### III. DISCUSSION

█ The Court notes as an initial matter that the government has standing to bring this Motion. The government's Motion in this case asks the Court to determine whether public funds are being misused. (Doc. No. 40 at 1.) The government always has the right, and indeed it is charged with the responsibility, of bringing to the Court's attention any possible misuse or waste of public funds. *See, e.g., United States v. Barger,* 672 F.2d 772, 774 (9th Cir.1982) (indicating that the United

States has a "great interest" in securing the reimbursement of monies advanced by the government for representation of persons whose indigency is questioned); *United States v. Pinckney*, 491 F.Supp. 82, 84 (W.D.Mo.1980) (denying government's motion to remove defendant's appointed counsel with leave to renew the motion should defendant become financially able to obtain counsel). As such, Defendant's argument that the government should be allowed no involvement in deciding whether to appoint counsel for an indigent defendant,[5] (Doc. No. 36 at 2), is without merit.

■ With respect to the merits of the government's Motion, the Court recognizes that this case presents a novel question of law.[6] Namely, the issue before the Court is whether previously appointed counsel to an indigent defendant should be removed upon the subsequent retainment of private counsel for the same defendant by a third party with funds to which the defendant has no access, claim, or control. After careful consideration of the statutory and constitutional mandates at issue in this case, the Court concludes that subsequent retainment of private counsel by a third party with assets to which a defendant does not have access, claim, or control does not render the defendant financially able to obtain counsel within the meaning of 18 U.S.C. § 3006A(b).

### 1. Defendant's Financial Ability to Retain Counsel

There is no dispute that Defendant was properly appointed counsel pursuant to the magistrate's initial determination that Defendant was "financially unable to obtain counsel" under 18 U.S.C. § 3006A(b). (Tr. at 2.) Furthermore, neither party contends that Defendant's personal financial situation, apart from the assistance offered by the third party, has changed since he initially was appointed counsel. (*see generally* Docs. No. 32, 36.) Thus, in resolving this matter, the Court must first consider whether the retainment of private counsel by a third party, subsequent to the Court's initial appointment of counsel to Defendant, with funds to which Defendant has no access, claim, or control, renders Defendant financially able to obtain counsel within the meaning of 18 U.S.C. § 3006A(b) and thus, ineligible for appointed counsel under the CJA.

### a. Martinez–Torres and additional federal caselaw

The government argues that the Court should consider the funds provided by the third party to retain Mr. Oliva in determining whether Defendant remains financially eligible for appointed counsel. In support of this argument, the government relies primarily on *United States v. Martinez–Torres*, 556 F.Supp. 1275 (S.D.N.Y. 1983), which holds that "[f]inancial inability includes an inquiry into whether there is available to defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds." *Id.* at 1279. The Court, however, does not

---

**5.** Defendant points to the text of the Guide to Judiciary Policy and Procedures in support of this argument. (Doc. No. 36 at 2–3.) However, the language in the Guidelines does not preclude the government from participating in the process of determining financial eligibility, but rather prohibits the government from using the financial eligibility inquiry as a tactical opportunity to discover information about a defendant's financial situation. *See* VII Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Appointment of Counsel in Criminal Cases § 2.03(C) (1993) (stating that the prosecution shall not use the judicial inquiry into financial eligibility "as a forum to discover whether the person has assets subject to forfeiture, or the ability to pay a fine, make restitution, or compensate another person pursuant to the Victim/Witness Protection Act or other purposes not related to the appointment of counsel").

**6.** Indeed, the government's motion appears to present a case of first impression. The Court has been unable to find any case directly addressing the issue presented by this case in any circuit, and the parties have indicated that they too, have been unable to find any case directly on point. (Tr. at 4.)

find *Martinez–Torres* to be relevant to the instant matter for the following reasons.

First, neither *Martinez–Torres,* nor any of the cases relied upon therein, involve a situation such as that presented in the instant case where the "friends" of a defendant voluntarily retained an attorney on defendant's behalf from funds to which the defendant had no access, claim or control. In *Martinez–Torres,* the court, in considering the defendants' application for counsel on appeal, was concerned that the defendants had hidden large sums of money derived from illegal drug activity in secret bank accounts and with family members in Puerto Rico. *Id.* at 1277–79. The court held that in order to carry their burden of proving financial inability, it was necessary for the defendants to show that the money already paid to the defendants' trial counsel was not the proceeds of illegal activity. *Id.* at 1279. Accordingly, in determining whether the defendants had hidden assets derived from illegal activity, the court held it was proper to inquire into "other sources such as family, friends, trusts, estates, or defense funds." *Id.*

In support of this holding, the *Martinez–Torres* court relied upon: *United States v. Schmitz,* 525 F.2d 793, 794 (9th Cir.1975) (considering transfers in trusts in determining financial inability); *Souder v. McGuire,* 516 F.2d 820, 821 (3rd Cir. 1975) (considering money sent by defendant's mother to his prison account in determining financial inability); and *United States v. Cohen,* 419 F.2d 1124, 1126 (8th Cir.1969) (considering real estate in determining financial inability). These cases also do not involve a situation where a third party subsequently retains counsel on behalf of a defendant with funds to which the defendant has no access, claim or control. In *Souder v. McGuire,* the Third Circuit, in reversing the district court's denial of the defendant's application to proceed *in forma pauperis* and in assigning defendant counsel pursuant to 18 U.S.C. § 3006A(g), considered money sent to the defendant's prison account by his aged mother. 516 F.2d at 821. In *Cohen,* the Eighth Circuit reversed the district court's denial of counsel to a defendant upon considering that the real estate which the defendant owned was subject to imminent foreclosure. 419 F.2d at 1126–27. And in *Schmitz,* the Ninth Circuit considered property that the defendant had transferred in trust to his daughter in making a preliminary determination that the defendant was not entitled to receive a free transcript on appeal. 525 F.2d at 794–95. Thus, the Court declines to adopt that part of the holding in *Martinez–Torres,* which states that assets available to a defendant from "friends" should be considered in determining financial eligibility under the CJA, as it is irrelevant to consideration of the instant case.

Second, insofar as *Martinez–Torres* and the cases cited therein support the proposition that some courts consider assets available from family, trusts, and estates, the funds at issue in all of the aforementioned cases were within the personal control of the defendant or were hidden or transferred purposely by the defendant in an effort to qualify for financial assistance. In *Cohen,* the defendant owned the real estate at issue. 419 F.2d at 1125–26. In *Souder,* the defendant's aged mother sent $15 every two weeks to the defendant's prison account in the form of an allowance or gift to be spent at the defendant's discretion. 516 F.2d at 823–24. In *Schmitz,* the court closely scrutinized property that the defendant had transferred in trust to his daughters because it was concerned the defendant purposely had relinquished property he owned in an effort to circumvent financial eligibility requirements. 525 F.2d at 794–95. And finally, in *Martinez–Torres,* the court denied the appointment of counsel because it suspected the defendants had funds available to them derived from illegal drug activity and because the defendants had failed to satisfactorily explain their finances to the court. 556 F.Supp. at 1280.

By contrast, in this case, it is undisputed that Defendant neither possesses nor has control over the assets utilized by the third party to retain Mr. Oliva. This is not a case where Defendant has received assets or income from the third party payers in the form of a gift so that Defendant is free to control how and whether the assets will be spent on his defense. Rather, the assets are solely in the control of a third party who may withdraw the funds or alter the way in which they are spent at any time. Thus, insofar as *Martinez–Torres*, and the cases cited therein, involve assets available to a defendant from other sources that were within the defendant's control or possession, they are not instructive in this case.[7]

7. The government's reliance upon *United States v. Robinson*, 718 F.Supp. 1582 (M.D.Ga.1989) and *United States v. Salemme*, 985 F.Supp. 197 (D.Mass.1997) is similarly misplaced. *Robinson* involved the consideration of a convicted defendant's application to proceed *in forma pauperis* on appeal. The *Robinson* court denied the defendant's application based upon the combination of two facts: (1) the defendant's ability to have a $9,000 payment made by a third party on his behalf for his defense at trial; and (2) the defendant's refusal to provide the court with sufficient information upon which to determine his financial status. 718 F.Supp. at 1583. The *Robinson* court cited *Martinez–Torres* for the proposition that the judicial inquiry into financial inability includes consideration of other sources "such as family, friends, trusts, estates, or defense funds." *Id.*

Initially, the Court notes that *Robinson* is a case from the Middle District of Georgia and, as such, has no precedential value in this Circuit. Second, insofar as *Robinson* relies on *Martinez–Torres* for the proposition that assets available from friends should be considered in determining financial eligibility, the Court does not find *Robinson* instructive for the reasons discussed above. Third, while the *Robinson* court considered the fact that the defendant previously had received financial support from a third party to pay for his trial expenses, the decision is silent as to whether the defendant had access, claim or control over those assets. And finally, *Robinson* concerned the initial appointment of counsel on appeal, and not the removal of previously appointed counsel during pre-trial litigation. As such, *Robinson*, as well as the rest of the cases cited by the government, does not address the special considerations

### b. State court opinions

Although there are no federal cases directly addressing the issue presented in this case, various state courts have held that only those assets within a defendant's possession or control should be considered when determining financial eligibility for court-appointed counsel. *See, e.g., State v. Gardner*, 626 S.W.2d 721, 724 (Tenn. Crim.App.1981) (stating that the "financial condition of defendant's relatives has no bearing on question of defendant's solvency for purposes of determining whether he is an 'indigent person' entitled to appointment of counsel"); *Keur v. State*, 160 So.2d 546, 549 (Fla.Dist.Ct.App.1963)

presented to the Court in the instant case by a motion to remove counsel. Thus, the Court does not find *Robinson* relevant to its decision in this matter.

In *Salemme*, the court ordered the defendants to disclose whether they had income or assets available to them from "other sources such as family, friends, trusts, or estates." 985 F.Supp. at 203. In support of this order, the *Salemme* court cited *Martinez–Torres* and *United States v. Barcelon*, 833 F.2d 894 (10th Cir.1987). Insofar as *Salemme* relies upon *Martinez–Torres* for the proposition that assets available from friends may be properly considered, the Court does not find *Salemme* instructive for the reasons discussed above. With respect to *Barcelon*, the decision says nothing of considering funds available to a defendant from friends, but instead cites authority for the proposition that a court may consider the income available to a defendant from a spouse, trusts and estates. *Id.* at 897 n. 5. The instant case does not involve assets available from a spouse, trusts or estates. Moreover, assets available to a defendant from a spouse are wholly different from assets belonging to a third party who has no legal duty to assist the defendant. Unlike a third party payer, a spouse has an enforceable legal duty to care for his or her spouse. Furthermore, assets available from trusts or estates over which a defendant has control or to which he has secreted assets in an effort to qualify for court-appointed counsel, are distinguishable from assets that are within the exclusive control of a third party. Thus, *Barcelon* is not relevant to the Court's inquiry in this matter. As such, the Court finds that the government's reliance on *Salemme* is without authority.

(holding that the appropriate inquiry into insolvency "is not whether the defendant's supposed friends or spouse or relations have the ability or readiness or willingness to provide the funds, but whether the defendant personally has the means, or property which can be converted to the means, to employ an attorney to represent him"); *Ex parte Sanders*, 612 So.2d 1199, 1201 (Ala.1993) (holding that "[i]f the assets of friends and relatives who are not legally responsible for the defendant are not included in determining a defendant's indigency, then the fact that a friend or relative pays for an indigent defendant's counsel should not be considered in determining whether the defendant is entitled to funds for expert assistance"). In fact, in a case similar to the instant case, the Arizona Supreme Court in *Knapp v. Hardy*, 111 Ariz. 107, 523 P.2d 1308 (1974), held that the defendant remained financially eligible and thus able to retain his court-appointed counsel, despite the fact that his mother had subsequently hired a private attorney to assist the public defender in the defense of her son's case. *Id.* at 111, 523 P.2d 1308.

The Court finds these cases instructive because they address the problem raised when a third party with no legal obligation to a defendant retains private counsel on the defendant's behalf. Although a defendant may have family or friends who are capable of providing the defendant with funds, the defendant has no legal means of compelling such aid. It cannot be said that a defendant who is in the position of relying on the goodwill of friends and family, who are under no legal obligation to assist the defendant, possesses the ability to retain counsel. *See, e.g., State v. Van Gorder*, 192 Iowa 353, 184 N.W. 638, 639 (1921) (holding that "[t]he fact that defendant was able to furnish an appeal bond, or that his wife has an interest in her father's estate, or that the appellant has brothers and sisters and other relatives ... who had previously come to his aid, is not a sufficient reason why he should be denied a transcript at the expense of the county,

as he has no legal way of securing any funds from these sources with which to pay for a transcript"). As such, the Court does not find it proper to consider the assets of a third party payer over which a defendant exercises no legal control or access when determining whether the defendant remains financially unable to obtain counsel. When considering the Sixth Amendment right of a defendant to counsel, it would be dangerous to leave the fulfillment of that right to the goodwill and benevolence of individuals who owe no legal obligation to the defendant.

■ In this case, it is undisputed that Defendant does not have access, claim, or control over the assets of the third party used to retain Mr. Oliva. (Doc. No. 25.) In addition, the Court is satisfied after reviewing the affidavit of the third party payers and conducting an *in camera* discussion with Defendant and both of his counsel, that this is in fact the case. Thus, based upon the fact that Defendant's personal finances have not changed and that Defendant has no access, claim or control over the third party's assets, the Court finds that Defendant remains unable to obtain counsel within the meaning of 18 U.S.C. § 3006A(b) and therefore, remains eligible for court-appointed counsel under the CJA. The Court limits its holding to the facts of the instant case, wherein a third party subsequently retains an attorney on behalf of a defendant represented by court-appointed counsel with funds to which the defendant has no access, claim, or control.

### 2. *Interests of Justice*

■ In addition, the Court finds that even if Defendant was no longer "financially unable" to obtain counsel under Section 3006A(b), the interests of justice would not be served in this case by removing appointed counsel. Section 3006A(c) of the CJA provides that a court "*may* terminate the appointment of counsel or authorize payment as provided in subsection (f), *as the interests of justice may dictate* " upon a finding that a defendant is able to obtain counsel. 18 U.S.C. § 3006A(c) (emphasis

added). Deciding whether to remove counsel after appointment, as distinguished from deciding whether to initially appoint counsel, raises unique problems and concerns for a court. As such, the language of the CJA affords significant discretion to courts in deciding whether the interests of justice will be met by removing court-appointed counsel.

In this case, the Court finds that the interests of justice would not be served by removing Mr. Watson for the following reasons. First, the Defendant is not able to control the assets of the third party payers. While the third party payers have indicated a desire to assist Defendant in the defense of his case, there is no guarantee that their desire or ability to do so will continue. Neither Defendant, nor the Court, can control whether the third party will continue paying Mr. Oliva's fee given that they are under no legal obligation to do so. Under such circumstances, this Court is unwilling to wager Defendant's Sixth Amendment right to counsel on a gamble that the third party will continue to pay for his defense.

Second, the Court finds that removal of Mr. Watson may cause considerable prejudice to Defendant. Specifically, the Court is concerned that a situation may arise where, upon Mr. Watson's removal, the third party payers would be unable or unwilling to continue providing funds for Mr. Zelenka's defense. Indeed, the third party payers did not agree to pay Mr. Oliva as sole counsel to Defendant, nor did they agree to pay the undoubtedly higher fee that would accompany such representation. Rather, they offered to pay Mr. Oliva's fee only insofar as he served as co-counsel to Mr. Watson and only for a limited amount of money. If the third party payers were to cease providing funds for Mr. Zelenka's defense, the Court recognizes that Mr. Oliva may be forced to withdraw in light of financial considerations. The Court would then have to re-appoint counsel to Defendant, leaving Defendant in the precarious position of preparing to defend himself on the eve of trial against a complex, twenty-two count indictment with newly-appointed counsel. Counsel would be assuming Mr. Zelenka's defense at a point in which the prosecution of this complex case was well underway, whereas Mr. Watson has represented Defendant for almost one year, indeed from the beginning of this matter. As such, removing Mr. Watson would cause significant prejudice to Defendant's Sixth Amendment right to adequate representation.

Thus, the Court finds that in light of the fact that Defendant has no access, claim or control over the funds used to retain Mr. Oliva, the prejudice to Defendant that would arise if the third party were to stop funding his defense, the complex nature of the case, and the fact that Mr. Watson has served as lead counsel to Defendant for almost one year, the interests of justice would not be served by removal in this case.

■ Finally, the Court notes that while it appreciates the gravity of the government's argument regarding the misuse of public funds, it does not agree that this case presents such a problem. Simply because private counsel is assisting a federal defender in representing an indigent defendant, does not mean that public funds are being misspent. "On the contrary, privately retained counsel can relieve the public defender of both time and money that he might have to spend if he had the sole responsibility of the defense." *Knapp,* 111 Ariz. at 112, 523 P.2d 1308. In this case, Mr. Oliva has submitted an affidavit under seal detailing the work he has done on Defendant's case, at no expense to the federal defender's office and the taxpayer, all of which the federal defender would have had to perform had he not been assisted by Mr. Oliva. (Doc. No. 38.) Thus, the Court does not find that permitting Mr. Watson to continue representing Defendant, assisted by Mr. Oliva, constitutes a misuse or waste of public funds.

### *CONCLUSION*

For the above stated reasons, the Court hereby DENIES the government's Motion·

to Determine Defendant's Representation. Accordingly, Defendant is permitted to proceed with both his appointed attorney, Mr. Watson and his retained attorney, Mr. Oliva. The Court reserves the right to issue a formal opinion in this matter consistent with the reasoning set forth herein.

An Order consistent with this Memorandum shall be entered contemporaneously.

### ORDER

Pending before the Court is the government's Motion to Determine Defendant's Representation, asking the Court to remove Defendant's appointed counsel Mr. Thomas Watson. (Doc. No. 31.)

In accordance with the reasoning set forth in the contemporaneously entered Memorandum, the Court hereby DENIES the government's Motion to Determine Defendant's Representation. Accordingly, Defendant is permitted to proceed with both his appointed attorney, Mr. Watson, and his retained attorney, Mr. Oliva.

It is so ORDERED.